# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

Docket Number(s): 13-658     Caption [use short title]

Motion for: Habeas corpus

Santiago v. Unger

Set forth below precise, complete statement of relief sought:

Petitioner's constitutional due process

was violated, pursuant to Supreme Court

Morrissey v. Brewew, 408 U.S. 471, 479,480.

MOVING PARTY: John Santiago     OPPOSING PARTY: David Unger
[X] Plaintiff     [ ] Defendant
[ ] Appellant/Petitioner     [ ] Appellee/Respondent

MOVING ATTORNEY: N/A     OPPOSING ATTORNEY: Attorney General
[name of attorney, with firm, address, phone number and e-mail]
Orleans Correctional Facility     120 Broadway
3531 Gaines Basin Road     New York, N.Y. 10271
Albion, New York 14411

Court-Judge/Agency appealed from: Michael A. Telesca – District Court Judge, WDNY

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
[ ] Yes [XX] No (explain): I wasn't aware that
it was a requirement.

Opposing counsel's position on motion:
[ ] Unopposed [ ] Opposed [ ] Don't Know
Does opposing counsel intend to file a response:
[ ] Yes [ ] No [ ] Don't Know

Is oral argument on motion requested? [ ] Yes [ ] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [ ] Yes [ ] No If yes, enter date:

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has request for relief been made below? [ ] Yes [ ] No
Has this relief been previously sought in this Court? [ ] Yes [ ] No
Requested return date and explanation of emergency:

Signature of Moving Attorney:
_Santiago_     Date: 3/31/13     Service by: [ ] CM/ECF [XX] Other [Attach proof of service]

## ORDER

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED   DENIED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____   _____     By: _____

Form T-1080 (rev. 7-12)

## PROPERTY

Do you own any real estate, stock, bonds, notes, automobiles or other valuable property (excluding ordinary household furnishings and clothing?)☐ Yes ☒ No
If YES, give value and describe it:

Value      Description

_____   _____

_____   _____

_____   _____

## DEPENDENTS

Marital status:    Total No. of Dependents: _____

☒ Single

☐ Married

☐ Widowed

☐ Separated or Divorced

List persons you actually support & your relationship

_____

_____

_____

_____

## DEBTS & MONTHLY BILLS

List all creditors, including banks, loan companies, charge accounts, etc.

| Creditors: | Total Debt: | Monthly Payment: |
|---|---|---|
| Apt. or Home: _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |

I certify the above to be correct. _Santiago_    _3/31/13_
        Signature of Movant    Date

**WARNING:** A false or dishonest answer to a question in this affidavit may be punishable by fine, imprisonment, or both.

**Attach this completed Financial Affidavit to a completed**
**T-1080 Motion Information Statement, available on the Court's website.**

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## PRISONER AUTHORIZATION FORM

| THIS SECTION MUST BE COMPLETED BY APPELLANT | | |
|---|---|---|
| CASE TITLE:<br><br>John Santiago<br><br>v.<br><br>David Unger | USCA DOCKET NUMBER:<br>13-658pr | APPELLANT:<br>John Santiago |
| | DISTRICT:<br>Western | COUNSEL'S NAME:<br>Pro-se |
| | DISTRICT/AGENCY NUMBER:<br>12-cv-133 | COUNSEL'S PHONE:<br>N/A |

Pursuant to 28 USC § 1915(b), I, request and authorize the institution holding me in custody to send to the Clerk of the United States Court of Appeals for the Second Circuit certified copies of my prison trust fund account statements or the institutional equivalent for the past six months.

I further request and authorize the institution holding me in custody to calculate the amounts specified by the statutes, to deduct those amounts from my prison trust fund account, or institutional equivalent, and to disburse those amounts to the United States District Court for the Western District       .

This authorization is furnished in connection with the above numbered and entitled case and shall apply to any institution into whose custody I may be transferred.

**I UNDERSTAND THAT THE COURT OF APPEALS FILING FEE OF $455 WILL BE PAID IN ITS ENTIRETY, IN MONTHLY INSTALLMENTS, BY AUTOMATIC DEDUCTIONS FROM MY PRISONER TRUST FUND ACCOUNT EVEN IF MY APPEAL IS DENIED OR DISMISSED.**

**THE COLLECTED FUNDS WILL BE FORWARDED AS PAYMENT UNDER § 1915 TO THE UNITED STATES DISTRICT COURT FOR THE** Western District       .

Provided, that the motion to proceed in Forma Pauperis is denied.

_____
Signature of Appellant

3/31/13
_____
Date

John Santiago
_____
Print Name

UNITED STATES COURT OF APPEAL
FOR THE SECOND CIRCUIT

JOHN SANTIAGO, #07A1732
Appellant,

-against-                                    DOCKET NUMBER, 13-658

DAVID UNGER, SUPERINTENDENT,
Respondent,

APPLICATION FOR LEAVE TO APPEAL (COA)


CONSTITUTIONAL VIOLATION:

1). Appellant brings up for review the Constitutionality
decision of the "two-step" due process of the final parole
revocation decision as mandated per Supreme Court Precedent,
**Morrissey v. Brewer, 408 U.S. 471.** Under Morrissey, a "two-step"
due process is required "within" the final revocation decision.
In this regard, the Supreme Court ruled that, "...[t]he 'first-step'
in a 'revocation decision,' thus involves a wholly retrospective
factual question: whether the parolee has in fact acted in violation
of one or more conditions of his parole. Only if it is determined
that the parolee 'did violate the conditions' does the 'second
question' arise: should the parolee be recommitted to prison or
should other steps be taken to protect society and improve chances
of rehabilitation? **id. 479, 480,** See also, **U.S. Carson v. Taylor,
403 F. Supp. 747, 751 (S.D.N.Y. 1975); Rastelli v. Warden, Metro.
Corr. Center, 610 F. Supp. 961, 978 (S.D.N.Y. 1985)** ("The finding

of violation...is only a first step. The second, and more crucial determination is whether the violation warrant returning the parolee to prison. Due process must attent both stages of the inquiry."), citing **Morrissey**, reversed on other grounds, otherwise affirmed, 782 F.2d 17 (2nd Cir. 1986).

2). In the matter of **Mayfield v. Evans, 93 A.D.3d 98, 938 N.Y.S. 290,** the New York State Appellate Division, First Judicial Department, 2012, acknowledged this "two-step" due process "within" the revocation decision and concluded that, "...[u]nder **Morrissey,** due process attaches not only to the proof of violation stage of the revocation proceeding, but also to the time assessment stage... Lastly, the **Morrissey** court not only considered the time assessment to be the 'second step' of the two-part process, it considered it the more complex step." **Mayfield,** at 298-299. Hence, the mere fact that appellant incurred a new conviction while on parole supervision, and thereby, establishing that he has in fact violated the condition of his parole, does not alleviate the state of the second-step of the final revocation decision, so as to determine the consequences (time assessment) if any, appellant was to receive for the parole violation.

## STATEMENTS OF FACTS, PROCEDURAL HISTORY
## & CONSTITUTIONAL VIOLATION:

3). On July 8, 2006, appellant, while on parole supervision for an undischarged 1992 conviction, was arrested and subsequently, pleaded guilty pursuant to a negotiated plea of a $1\frac{1}{2}$ to 3 imprisonment

of imprisonment running consecutive, the respective minimum periods and maximum terms are added pursuant to Penal Law 70.30 (1)(b) to yield a single aggregate indeterminate sentence. An inmate serving such a single, aggregate indeterminate sentence, moreover, 'remains subject to all of the components sentences for the duration of the aggregate maximum term of imprisonment,' " citing **people v. Buss, 11 N.Y.3d 553.** See, Matter of **Santiago v. Alexander, 2010 N.Y. Misc. Lexis 3763 (N.Y. Sup. Ct. July 22, 2010);** the dismissal was affirmed by the Appellate Division, Third Judicial Department, on January 27, 2011, Matter of **Santiago v. Alexander, 80 A.D.3d 1105, 916 N.Y.S.2d 529 (App. Div. 3d Dept. 2011)** and the Court of Appeal denied leave to appeal on June 28, 2011, **17 N.Y.3d 705, 929 N.Y.S.2d 96 (2011).**

7). On January 10, 2012, appellant filed a petition for habeas corpus relief, pursuant to 28 U.S.C.A. 2254 with the Western District Court of the State of New York, asserting a deprivation of the "second-step" (dispositional phase/time assessment) due process of the final revocation decision as mandated under **Morrissey v. Brewer, supra.**

8). Appellant there, notified the Western District Court that under New York State law, Executive Law 259-i (3)(d)(iii), only dispensed of the first-step of the two-step due process within the final revocation decision. Appellant explained to the District Court that the Court of Appeal in New York State in the matter of **People ex rel. Harris v. Sullivan, 74 N.Y.2d 305, 310,** and the lower Courts therein, made it perfectly clear that; "the legislative

history of subsection (3)(d)(iii) of Executive Law 259-i, the revocation hearing exemption confirms that the exception was intended to dispense with the requirement of a final revocation hearing in only the one instance where the hearing served no apparent purpose - that is, where the parolee has been convicted of a new felony and has been sentenced to a new indeterminate sentence. In those circumstances, a final parole revocation hearing would be a vain gesture because <u>no 'fact finding' by the board of parole would be necessary to ascertain that the parolee has in fact violated the conditions of his parole, (emphasis strongly added)</u>. The Court of conviction and sentence would have already indisputably established that reality." **id. 310.**

9). If the above aforementioned, as underlined and emphasized strongly on, is not in clear comprehension language that Executive Law 259-i (3)(d)(iii) only dispensed of the first-step (fact finding phase) of the two-step due process of the final revocation decision as prescribed by the Supreme Court of the United States under **Morrissey,** as well as under regulatory guidelines, then appellant is pursuing a frivolous claim and should be sanctioned accordingly. However, appellant can assure this court that this matter constitute a novel issue, as no previous court has addressed the constitutionality of the second-step of the revocation decision in the matter at hand.

10). According to the parole policy and procedure manual, #9212, pg. 9 of 13, the final revocation decision consist of the two-step due process as required by **Morrissey.** The "first-step" is the "fact finding phase." See, <u>Exhibit A</u>, policy and procedure. Then clearly,

the Court of Appeal in **Harris, supra,** explaining the legislature
intent of Executive Law 259-i (3)(d)(iii), as only dispensing of
the first-step (fact finding) of the revocation decision, and
subsequently, leaving the second-step (disposition phase) unresolved.

11). However, the district court, concluded that the Supreme
Court, under **Morrissey,** "...established two criteria with regard
to the process that is due. First, there must be a 'preliminary
hearing' to determine whether there is probable cause or reasonable
ground to believe that the arrested parolee has committed acts
that would constitute a violation of parole conditions." Second,
there must be a revocation hearing, if desired by the parolee,
that leads to a final evaluation of any contested relevant facts
and consideration of whether the facts as determined warrant
revocation." The district court rationalized, that, "[i]n this
case, petitioner's federal due process right under **Morrissey**
were not violated when the Division of Parole failed to conduct
a final parole revocation hearing subsequent to his 2007 conviction.
The record clearly demonstrates -- and petitioner does not dispute --
that he was convicted of a new felony in 2007 and was sentenced
to an indeterminate term of $1\frac{1}{2}$ to 3 years imprisonment. The 2007
felony was committed while he was on parole stemming from his
1992 conviction, and his parole was therefore revoked by operation
of law. Since petitioner was therefore not entitled to a final
revocation hearing, his claim that his parole was not properly
revoked because he never had such a final hearing is necessarily

without merit." See, <u>Exhibit B</u>, Decision and Order, pg. 24.

12). Contrary to the court's ruling, appellant never questioned the requirements of the "<u>preliminary hearing</u>," nor did appellant questioned the legality of whether his parole was "<u>properly revoked</u>" without a final revocation hearing. Appellant conceded that the revocation of parole was a direct consequence of the new conviction, and consequently, no "fact finding" by the board of parole would be necessary to ascertain that he has in fact violated the conditions of his parole, thereby, resolving and authorizing the dispensation of the "first-step" of the final revocation decision, under **Morrissey**, but leaving the penalty stage, second-step, unresolved. Hence, the question therefore, is, under what authority does the appellant remain incarcerated, if no "collateral consequence" (time assessment) has been imposed for his parole violation in accordance with the mandates of **Morrissey**? *

13). In fact, appellant herein on February 14, 2013, moved the District Court pursuant to section 59(e) of the Federal Rules of the Civil Procedure, 28 U.S.C.A. for reconsideration to alter and/or amend its prior decision and order under docket number

----------------------------------------------------------------
*

This only buttress appellant's contentions under docket number 12-1245pr. that counsel's failure to inform appellant of the direct consequences of Penal Law 70.25 (2-a) and Penal Law 70.30 (1)(b), which enhanced the 2007 negotiated plea of 3 years, to an 11 year prison term is contrary to or an unreasonable application of clearly established law as set by Supreme Court Precedent, **Brady v. United States, 397 U.S. 742, 748.** See also, **Wilson v. McGinnis, 413 F.3d 196, 199, 200, (C.A.2 (N.Y.) 2005).**

12-cv-133 (MAT), so as to prevent a manifest injustice and correct its clear error of law and sparing the parties and Appellate Courts the burden of review, annexed hereto as Exhibit C, motion for reconsideration.

**14).** The cases the district court relied upon to conclude that the statutory provisions of Executive Law 259-i (3)(d)(iii) and its application have withstood constitutional challenges, was based on authorities that contested the "first-step" (fact finding) of the "two-step" due process of the final revocation decision. In **Keyes v. Juul, 270 F. Supp.2d 327, 329 (E.D.N.Y. 2003)** the court there, concluded, ("where as here, a parolee is arrested and convicted of a new crime, the need for a final hearing to protect a parolee's due process right by determining if the parolee has in fact violated one or more of the conditions of release in an important respect evaporates because the requirements of due process are satisfied either by the trial underlying the parolee's conviction or waiver by his plea of guilty.") **Alevras v. Neubert, 727 F. Supp. 852, 853 (S.D.N.Y. 1990); People ex rel. Maggio v. Casscles, 28 N.Y.2d 415, 418 (1971),** see, Decision and Order, pg. 23, Exhibit B. These cases cited by the district court merely challenges the revocation of parole without a "fact finding" decision to determine if they violated a condition of release. Appellant, to the contrary, conceded that a hearing is not required to determine whether he violated the conditions of his parole in light of a conviction and sentence resulting from a new arrest. In other words,

no "fact finding" decision is necessary to determine whether appellant has violated his parole. That decision/reality has been resolved as required by Executive Law 259-i (3)(d)(iii) and the Court of Appeal in **Harris v. Sullivan,** upon the new conviction because no "fact finding" is necessary, **id. 310.** Rather, what appellant has been contesting is the right to a disposition, time assessment or parole sentence that comprises the second-step of the revocation decision as required and mandated under **Morrissey v. Brewer, Id. 479, 480.**

15). It would be a clear violation of appellant's due process right to a reasonable expectation of finality, if as the State of New York has concluded that no final decision whether for a disposition/time assessment or any other purpose is required upon a conviction and sentence of a new crime, not only because Executive Law 259-i (3)(d)(iii) dispense of such requirement, but because penal law 70.30 (1)(b) aggregate the 3 year maximum term of the new 2007 sentence with the 8 years, 2 months and 20 days from the undischarged 1992 sentence, and thereby, not requiring any adjudication on the 8 years, 2 months and 20 days as both terms pursuant to penal law 70.30 (1)(b) are combined to yield one single sentence. Subsequently, enhancing appellant's negotiated 3 year maximum term to an 11 years, 2 months and 20 days sentence for the 2007 negotiated plea, by perpetuating the 3 year commitment order up to the aggregate maximum term. See, **Santiago v. Alexander, 2010 N.Y. Misc. Lexis 2408 (N.Y. Sup. Ct. Feb. 24, 2010, pg. 6 & 7 of 13),** enclosed as <u>Exhibit D.</u> Which also, contravene this Court's ruling in the

matter of **Wilson v. McGinnis, 413 F.3d 196, 200 (C.A.2 (N.Y.) 2005)** ("...section 70.30 (1)(b) prescribes the calculation of a term of imprisonment when the defendant has been sentenced to two or more consecutive terms. The statute does not purport to "connect" or relate the two terms for any purpose other than to compute how long the defendant is to be incarcerated ").

16). Appellant has consistently illustrated during this entire litigation that a two-step due process within the final revocation decision exist and have furnished corroborating evidence from the Supreme Court of the United States, to the New york State administrative parole policy and procedure, establishing unrefutably that a disposition/time assessment must be imposed for a number of constitutional reasons via a final revocation decision. Yet, the respondent, nor any court that has reviewed the instant matter have illustrated any leading authority that rationalized the dispensation of the "second-step" of the final revocation decision. Rather, they have substituted the rationale for dispensation, with that which was given for the dispensation of the "first-step" (fact finding phase) as announced herein. See, **Harris, at 310.**

17). This novel issue warrants review and this court should grant appellant a C.O.A. questioning, 1). whether the failure to conduct the "second-step" of the final revocation decision and imposing an "associated sentence" (time assessment) therein, in relation to appellant's undischarged term, violates appellant's

due process as the State Court's ruling is contrary to or an unreasonable application of clearly established federal law as set by Supreme Court precedent, **Morrissey v. Brewer**; or 2). whether the practice of New York State and its dispensation of the "second-step" of the final revocation decision passes constitutional muster, by the state aggregating the negotiated 2007, 3 year maximum term with the 8 years, 2 months and 20 days left on appellant's undischarged term and consequently, enhancing the 2007 term, to 11 years, 2 months and 20 days pursuant to penal law 70.30 (1)(b) and thereby, circumventing the "second-step" of the revocation decision and contravening appellant's reasonable expectation of finality by not imposing a "collateral consequence."

**18).** This matter is overlapping and closely related to docket number 12-1245pr. which is currently pending before this court and which appellant's assigned counsel under that matter has respectfully requested to have that case held in abeyance as this Honorable Court makes a determination as to whether it will grant appellant a C.O.A. and if so, appellant would like to have both matters consolidated. In this regard, the respondent under docket number 12-1245pr. concedes that an "associated sentence" is what enhances appellant's imprisonment via the "final revocation hearing." While under docket number 13-658pr. the respondent recognize and concede that appellant's enhanced imprisonment beyond the negotiated 2007 3 year maximum, is a direct result of penal law 70.30 (1)(b) which

combines both terms to purport one sentence and not a result of an "associated sentence" via the final revocation decision, as no final revocation decision is ever rendered for any purpose once a parolee is convicted of a new offense. Therefore, this court should grant appellant to proceed for further review, as the right hand (12-1245pr.) does not know what the left hand (13-658pr.) is doing. This matter cannot render as a "collateral consequence" sometimes, and as a "direct consequence" at others.

**WHEREFORE,** leave to appeal should be granted and both matters consolidated, so as to resolve this novel issue of controversy that violate the fundamental fairness of the due process clause.

John Santiago, #07A1732
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411-9199

EXHIBIT **"A"**

| NEW YORK STATE DIVISION OF PAROLE | MANUAL ITEM: 9212.00 | DATE: JULY 2004 |
|---|---|---|
| POLICY AND PROCEDURES MANUAL | SUPERSEDES: September 1988 | PAGE 1 OF 13 |
| APPROVING AUTHORITY<br><br>ANTHONY G. ELLIS II, EXECUTIVE DIRECTOR | SOURCE:<br><br>Executive Law 259-i (3)<br>9 NYC RR-Subtitle CC Part 8004.20 | SUBJECT:<br><br>REVOCATION PROCESS |
| | CROSS REFERENCES:<br><br>9212.01 - Violation of Release Report<br>9212.02 - Form 4030 Notice of Arrest/Warrant Issuance<br>9212.03 - Transitional Facility Program<br>9212.05 – Subpoenas<br>9300.00-Interstate Bureau Function<br>9405.04 - Search and Seizure<br>9405.05-Return of Parole Violators from Other Jurisdictions<br>9423.00-Parole Jail Time<br>9204.02-Case Transfers<br>9212.07- Final Declarations of Delinquency<br>9212.08-Wanted Notice<br>9212.11-Re-Release | |

## PURPOSE:

To provide Parole staff with information and direction in the Revocation process.

## POLICY:

In order to enhance community protection, Parole staff will implement necessary action to intercede with persons under supervision whose behavior demonstrates an inability and/or unwillingness to abide by the conditions of their release.

## DEFINITIONS:

2. At the Preliminary Hearing, the Hearing Officer may grant an alleged violator an adjournment for good cause or for counsel, if a determination is made that counsel is necessary. The Hearing Officer will complete a Preliminary Hearing Decision Notice Form 9013 and distribute copies as appropriate. Parole staff will immediately notify PVU of the adjourned date.

NOTE: Any adjournment at the request of the alleged violator or counsel extends the 14-day period in which a Preliminary Hearing must be held.

D. Final Hearings

1. The fact-finding phase

a. The *Administrative Law Judge (ALJ)* or a member of the Parole Board will conduct the hearing, will administer oaths, may entertain applications for an adjournment, will direct the presentation of evidence, and will make a determination as to which charges have been sustained by a *preponderance of the evidence*.

b. The *Parole Revocation Specialist (PRS)*/Parole Officer will present evidence and examine witnesses to prove the charges in the VORR/VOP package.

c. The releasee may present evidence and witnesses to refute or to mitigate the charges.

d. If no charges are sustained by a preponderance of the evidence, the presiding officer will dismiss the charges and order the warrant lifted immediately by submitting the appropriate documentation.

e. If one or more charges are sustained, a Delinquency Date (DD) will be established based on the earliest proven date of violative behavior.

2. The dispositional phase:

a. Both the releasee and the Division's representative will make their recommendations to the presiding officer for resolution of the revocation proceeding.

b. The Division may refer Parole violators to Willard Drug Treatment Campus (WDTC), Electronic Monitoring (EM), High Impact Incarceration Program (HIIP), Transitional Facility Program (TFP), as well as other regionally available treatment programs as appropriate.

c.  The presiding officer will consider those recommendations and will make a final determination except in those cases where further Board review is required in accordance with Parole Revocation Guidelines.

d.  The presiding officer may reserve decision for further review and/or consideration.

NOTE: There is an absolute right to counsel at Final Hearings. Counsel must file a written Notice of Appearance with the appropriate Parole Violation Unit. The Attorney of Record shall be given written notice of the date time and place at least 14 days prior to the first scheduled hearing unless the right to notice is waived.

E.  Adjournments of Final Hearing

1.  Prior to the Final Hearing, the appropriate PVU may grant an adjournment for good cause. Such request MUST be in writing. PVU will advise the PRS, the releasee and the attorney of record of the adjourn date.

NOTE: If an adjournment is requested by the Division prior to the first scheduled hearing, the releasee and attorney of record must have 14 days notice of the adjourned date, time and place unless the right to notice is waived.

NOTE: The Division has 90 days from the date of waiver of Preliminary Hearing or Finding of Probable Cause to complete the Final Hearing process. Any adjournment at the request of the alleged violator/attorney of record extends the 90-day period in which a Final Hearing must be held (Diamond Decision: Appendix E).

2.  At the Final Hearing, the presiding officer may grant an adjournment for good cause. The presiding officer will advise all present of the adjourned date. PVU staff will send further adjournment notifications as necessary. If a decision is made to adjourn, the PRS should request that testimony from witnesses present be entered into the record.

3.  In exceptional circumstances during a Final Hearing, the presiding officer may continue the proceeding to a subsequent date.

NOTE: If an adjournment is granted subsequent to the first scheduled hearing, reasonable notice must be provided to all parties of the adjourned date.

4.  A releasee may refuse to appear at the Final Hearing. If the refusal is a voluntary, knowing and intelligent waiver of the releasee's right to appear, the PRS may request that a hearing be held in absentia.

NOTE: The New York City Department of Corrections (NYCDOC) staff may forward, to Parole sta, at the hearing site, an Undelivered Defendant Form indicating that the inmate has refused to appear. This form will be maintained with the Violation of Parole Package (bluebacker).

EXHIBIT **"B"**

## Other Orders/Judgments
1:12-cv-00133-MAT Santiago v.
Unger

HABEAS,ProSe

## U.S. DISTRICT COURT

## U.S. District Court, Western District of New York

## Notice of Electronic Filing

The following transaction was entered on 1/22/2013 at 10:57 AM EST and filed on 1/22/2013
**Case Name:**       Santiago v. Unger
**Case Number:**     1:12-cv-00133-MAT
**Filer:**
**Document Number:** 17

**Docket Text:**
**-CLERK TO FOLLOW UP- DECISION AND ORDER denying the petition for a writ of habeas
corpus and dismissing the petition. (Clerk to close case.) Signed by Hon. Michael A.
Telesca on 1/22/13. (JMC)**

**1:12-cv-00133-MAT Notice has been electronically mailed to:**

Paul B. Lyons paul.lyons@ag.ny.gov

**1:12-cv-00133-MAT Notice has been delivered by other means to:**

John Santiago
07A1732
WYOMING CORRECTIONAL FACILITY
Box 501
Attica, NY 14011-0501

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1042579058 [Date=1/22/2013] [FileNumber=2362289-0
] [8c3ffebcf0e7ac08de2cdef5698c396a2cc18413d3530e6ee80ead489859572630b
0556dde0968412c92daa473bec85a5b98fdc1ceac1ad98c7476e071467d92]]

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN SANTIAGO,

Petitioner,

**DECISION AND ORDER
No. 12-CV-00133MAT**

-vs-

DAVID UNGER,
SUPERINTENDENT

Respondent.

## I. Introduction

*Pro se* Petitioner John Santiago ("Petitioner") has filed a
petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254
challenging the constitutionality of certain administrative
decisions made by the New York State Division of Parole with
respect to the revocation of his parole.

## II. Factual Background and Procedural History

### A. Petitioner's State Court Convictions and Sentencing

On March 18, 1992, Petitioner was sentenced in Bronx County
Supreme Court to an aggregate indeterminate sentence of 8 to
24 years upon his convictions for first-degree manslaughter,
second-degree criminal possession of a weapon, and second-degree
assault. See Pet., Attach.[1] at p 1; Resp't Ex. A at p 14;[2] Resp't

---

[1]

In between pages 5 and 6 of the pre-printed form habeas petition,
Petitioner inserts a seven page typed document entitled "Statement of Facts,
Procedural History & Grounds One and Two." This document is separately paginated
with the numbers 1-7. To avoid confusing the page numbers of the form habeas
petition with those of the attached document, the Court hereinafter refers to the
document entitled "Statement of Facts, Procedural History & Grounds One and Two"

Ex. E at Aff. ¶ 5. He was released from New York State Department of Correctional Services ("DOCS")[3] custody to parole supervision on September 6, 2000, having served over eight years, the minimum term of his indeterminate sentence. See Resp't Ex. A at p 14.

On July 8, 2006, while still on parole, Petitioner was arrested in connection with new criminal charges. See Resp't Ex. A at p 14; Resp't Ex. E at Ex. A. In February 2007, he pleaded guilty in Rockland County Court to second-degree attempted criminal possession of a forged instrument, a felony, and on March 22, 2007, he was sentenced, as a second felony offender, to an indeterminate term of 1 ½ to 3 years imprisonment. See Pet., Attach. at 1; Resp't Ex. A at p 14; Resp't Ex. E at Aff. ¶¶ 3-4. The Rockland County Court directed that Petitioner's 2007 sentence be served "consecutive to any undischarged determinate or indeterminate sentence." See Resp't Ex. A at p 14; Resp't Ex. E at Ex. H (Sentencing Mins. at p 4). Petitioner's parole was automatically revoked by operation of law as a result of his 2007 conviction. See Resp't Ex. E at Aff. ¶ 5; see also New York Executive Law ("Executive Law") § 259-i(3)(d)(iii).

---

as the "attachment" to the habeas petition.

[2]

The Court refers to the CM/ECF pagination for this Exhibit, as it is comprised of numerous numbered and unnumbered documents.

[3]

DOCS and the New York State Division of Parole have since been merged to form the Department of Corrections and Community Services.

Petitioner was received back into DOCS custody on March 29, 2007, and was certified as entitled to 264 days of jail time credit. See Pet., Attach. at 1; Resp't Ex. E at Ex. A. At the time Petitioner was received back into custody, DOCS determined that Petitioner still owed 8 years, 2 months, and 20 days against the undischarged maximum term of his 1992 indeterminate sentence. That undischarged term was aggregated with the maximum term of Petitioner's 2007 indeterminate sentence pursuant to Penal Law § 70.30(1)(b). See Resp't Ex. A at p 14. Accordingly, on or about April 9, 2007, DOCS calculated Petitioner's parole eligibility, conditional release, and maximum expiration dated with respect to his multiple sentences as January 4, 2008, December 27, 2013, and September 24, 2017, respectively. See Resp't Ex. A at p 14 and attached Ex. B (DOCS Legal Date Computations). On June 1, 2007, the Division of Parole issued a Notice of Final Declaration of Delinquency stating that Petitioner had been found delinquent on his conditions of parole as of July 8, 2006 (in connection with his arrest and conviction for a felony while on parole) and that his maximum expiration date had been extended, pursuant to Executive Law § 259-i(3)(d)(iii), based on the undischarged indeterminate sentence from his prior conviction. See Resp't Ex. A at attached Ex. J (Notice of Final Declaration of Delinquency by Board of Parole).

On October 31, 2007, Petitioner appeared before the Parole Board in anticipation of his January 4, 2008 parole eligibility date. At the conclusion of the hearing, parole was denied and Petitioner was directed to be held for an additional 24 months, with his next Parole Board appearance scheduled for November 2009. See Pet., Attach. at 1; Resp't Ex. A at p 14-15 and attached Exs. C (Parole Board decision), K (transcript of 10/31/07 parole board hearing).

Petitioner then filed an administrative appeal with the Division of Parole Appeals Unit (hereinafter "Appeals Unit"). See Resp't Ex. A at p 15 and attached Ex. D (Letter from Appeals Unit); Resp't Ex. E at Ex. G. In a letter to Petitioner dated November 13, 2007, the Appeals Unit acknowledged that it had received Petitioner's notice of appeal on that date and that the latest date for submitting documentation for perfecting his appeal was March 13, 2008. See Resp't Ex. A at Ex. D (Letter from Appeals Unit). On appeal,[4] Petitioner did not challenge "the parole denial itself," but rather sought modification of the "excessive" 24-month hold imposed by the Parole Board. See Resp't Ex. E at Ex. G, ¶ 1. The Appeals Unit failed to issue a determination on Petitioner's appeal. See Pet., Attach. at 1-2; Resp't Ex. A at p 15 and attached Ex. F.

---

[4]

The cover page of Petitioner's appeal is date-stamped by the Appeals Unit, indicating that it was "[r]eceived March 13, 2008." See Resp't Ex. E at Ex. D (cover page).

## B.    The Article 78 Proceeding

Petitioner subsequently filed in Franklin County Supreme Court a *pro se* petition dated December 23, 2008, pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"), challenging "the decision by the division of parole at [his] parole eligibility hearing on October 31, 2007 which denied parole[] and scheduled a re-appearance parole eligibility date for Nov. 2009." See Resp't Ex. A at p 9, ¶ 3.

In the Article 78 petition, Petitioner argued that the approximately 8-year undischarged maximum term from his 1992 indeterminate sentence was entirely separate from his 2007 sentence of 1 ½ to 3 years, such that he would "not commence the un-discharged [8-year] term [from the 1992 sentence] until he complete[d] the 3 year maximum on the new [2007] sentence." See Resp't Ex. A at p 19-20.    Petitioner argued that, although the Parole Board properly calculated his January 4, 2008 parole eligibility date based on the 1 ½ year minimum term under his 2007 sentence, the Board improperly scheduled his next Parole Board hearing for November of 2009, even though that was approximately six months after his 2007 sentence had already expired on July 4, 2009.    See Resp't Ex. A at p 20.    Petitioner argued further that when he completed the maximum term of his 2007 sentence on July 4, 2009, the Division of Parole should hold a final revocation hearing

-5-

under Executive Law § 259-i(3)(f)(x) with respect to the 8-year undischarged term of his 1992 sentence, at which hearing he would be given a "delinquent time assessment." See Resp't Ex. A at p 20-21.

Petitioner also claimed that his equal protection rights were violated because of the different parole revocation procedures afforded a parolee convicted of a new felony, depending on whether the new conviction was in New York or in another state. See Resp't Ex. A at p 21-25.

Respondent, the Division of Parole, moved to dismiss the petition on the ground that Petitioner had failed to exhaust his administrative remedies. See Resp't Ex. B. On June 23, 2009, the Franklin County Supreme Court denied Respondent's motion, finding that the issues raised in Petitioner's Article 78 proceeding "were not cognizable in the context of an administrative appeal from a parole denial determination." Resp't Ex. D. The Division of Parole then filed its answer to the petition, and Petitioner filed a Reply. See Resp't Exs. E, F. On November 4, 2009, the county court directed the Division of Parole to address Petitioner's equal protection claim. See Resp't Ex. G. The Division of Parole filed an affirmation in response, and also asserted that all of Petitioner's claims were moot in light of Petitioner's second

appearance before the Parole Board in 2009.[5] By Order dated February 24, 2010, the Franklin County Supreme Court dismissed the Article 78 proceeding. See Resp't Ex. J. Petitioner moved for reargument, which was denied on July 22, 2010. See Resp't Exs. K, M.

## C. Appeal of the Article 78 Petition

Petitioner filed a *pro se* appeal with the Appellate Division, Third Department, asserting the same two claims that he raised in his Article 78 petition. See Resp't Ex. N. On January 27, 2011, the Appellate Division unanimously affirmed the judgment dismissing Petitioner's Article 78 proceeding. See Matter of Santiago v. Alexander, 80 A.D.3d 1105 (3d Dep't 2011) (Resp't Ex. Q). Petitioner applied to the Appellate Division for permission to appeal to the Court of Appeals (Resp't Ex. R), and Petitioner's motion was denied on March 25, 2011 (Resp't Ex. S). Petitioner then applied directly to the Court of Appeals for leave to appeal, which was denied on June 28, 2011. See Santiago, 17 N.Y.3d 705 (2011) (Resp't Ex. V).

## D. The Federal Habeas Corpus Petition

On January 10, 2012, Petitioner filed the instant habeas petition, wherein he seeks relief on what he has termed a

---

[5]

While Petitioner's Article 78 proceeding was pending, Petitioner reappeared before the Parole Board on September 15, 2009, and again parole was denied and Petitioner was ordered held for an additional 24 months, with Petitioner's next parole board appearance scheduled for September 2011. See Resp't Ex. H at Aff. ¶¶ 6-7.

"constitutional and statutory due process violation" and an "equal protection violation" related to the revocation of his parole. See Pet., Grounds One-Two (Dkt. No. 1). As Petitioner has pled these claims in the instant proceeding, they appear to be the same two claims upon which he sought relief in his Article 78 petition. Respondent filed an Answer and Memorandum in Opposition to the habeas petition on August 17, 2012 (Dkt. Nos. 7, 8), and Petitioner filed a Reply thereto on October 1, 2012 (Dkt. No. 11). At the request of the Court, Respondent submitted supplemental papers addressing the issue of timeliness (Dkt. Nos. 13-15), and Petitioner submitted a supplemental Reply (Dkt. No. 16).

For the reasons stated below, habeas corpus relief is denied and the petition is dismissed.

## III. Venue

By Order dated May 10, 2012, this Court (John T. Curtin, D.J.) instructed Respondent, *inter alia*, to "address whether the Western District of New York is an appropriate and/or most convenient forum for this proceeding." See Order dated 05/10/12 (Dkt. No. 3) at 2-3. Respondent submits that venue is appropriate for the instant proceeding in the Western District, but that venue is also appropriate in the Northern District. See Resp't Mem. of Law at p 12-13.

28 U.S.C. § 2241(d) provides that:

> Where an application for a writ of habeas corpus is made by a person in custody

> under the judgment and sentence of a
> State court of a State which contains two
> or more Federal judicial districts, the
> application may be filed in the district
> court for the district wherein such
> person is in custody or in the district
> court for the district within which the
> State court was held which convicted and
> sentenced him and each of such district
> courts shall have concurrent jurisdiction
> to entertain the application. The
> district court for the district wherein
> such an application is filed in the
> exercise of its discretion and in
> furtherance of justice may transfer the
> application to the other district court
> for hearing and determination.

28 U.S.C. § 2241(d).

Because Petitioner was in custody at the Wyoming Correctional Facility, which is located in Wyoming County, at the time he filed his habeas petition, venue is appropriate in the Western District of New York. See 28 U.S.C. § 2241(d); 28 U.S.C. § 112(d). To the extent petitioner seeks to challenge the outcome of the parole proceedings that took place at the Franklin Correctional Facility, which is located in Franklin County, venue would also be proper in the Northern District of New York. See 28 U.S.C. § 112(a); Brooks v. Strack, No. 98-CV-6528 (JG), 1999 U.S. Dist. LEXIS 13199, 1999 WL 672949, at *4-5 (E.D.N.Y. Aug. 25, 1999) (where habeas petition challenged parole hearing procedures, venue was proper where parole hearing took place and where parole decision was made); see also Robinson v. Atkinson, No. 03 Civ. 5176, 2004 WL 1798129, at *4-5 (S.D.N.Y. Aug. 5, 2004).

Although venue is appropriate in both this District and the Northern District, the Court sees no need to transfer the petition to the Northern District. As Respondent points out, the convenience of witnesses is not an issue in this case, nor do the parties dispute that Petitioner's claims were adjudicated on the merits in the state court. See Resp't Mem. of Law at 13. Although, the parties dispute the timeliness of the petition (see discussion, *infra*), the Court is in receipt of the state court records relevant to the instant habeas proceeding and the parties have extensively briefed the issues necessary for this Court to resolve the habeas petition. Thus, the proximity of the judicial forum to Franklin County, the location of the parole proceedings, is not necessary to the adjudication of this petition.

## IV. Timeliness of the Petition

Respondent asserts untimeliness as an affirmative defense to the petition. See Resp't Mem. of Law, Point I. Petitioner maintains that the petition is timely, arguing that Respondent miscalculated the date the statute of limitations began to run. Petitioner also argues that, even assuming *arguendo* Respondent's calculation is correct, said calculation does not properly take into account tolling. See Pet'r Reply at ¶¶ 5-13. Supplemental papers were submitted by the parties with respect to the issue of timeliness, and the issue is ripe for review. After having

reviewed the parties' submissions, the Court finds that the petition is timely.

### (A) AEDPA's One-Year Statute of Limitations

A state prisoner may file a § 2254 petition no later than one year from the last of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In cases such as this where a habeas petition challenges a decision of the state Parole Board, or challenges an allegedly unauthorized action by DOCS, the applicable start-date is found in 28 U.S.C. § 2244(d)(1)(D), "the date on which the factual predicate of the claim or claims presented could have been discovered through

the exercise of due diligence." <u>Cook v. N.Y. State Div. of Parole</u>, 321 F.3d 274, 280-81 (2d Cir. 2003) (quotations omitted); accord <u>Jenkins v. Farrell</u>, No. 07 Civ. 6937, 2009 WL 1616008, at *2-3 (S.D.N.Y. June 9, 2009) (applying § 2244(d)(1)(D) to habeas claim regarding an alleged unauthorized action by DOCS). The Second Circuit held in <u>Cook</u> that the "factual predicate" for a petitioner challenging a parole revocation "is the revocation of his parole." <u>Id.</u> (finding that "[t]he limitations time therefore did commence at a time set by the statute, when that 'factual predicate [for his] claim . . . could' reasonably have been discovered, i.e., when Cook was notified that the administrative decision to revoke his parole had become final") (ellipsis and alteration in original).

Here, the Division of Parole issued a Notice of Final Declaration of Delinquency on June 1, 2007, stating that Petitioner had been found to be delinquent on his conditions of parole and that his maximum expiration date had been extended. <u>See</u> Resp't Ex. A attaching Ex. J. On October 31, 2007, Petitioner appeared before the Parole Board, and his parole was denied and his next parole board appearance scheduled for November 2009. On November 13, 2007, Petitioner filed a notice of appeal with the Appeals Unit, and timely perfected that appeal on March 13, 2008. <u>See</u> Resp't Ex. A attaching Exs. D, E. The Appeals Unit failed to issue a determination within the four-month time period set forth in

-12-

9 N.Y.C.R.R. § 8006.4[c]. Thus, July 13, 2008 -- four months after the Appeals Unit failed to act on Petitioner's appeal -- was the last possible date on which Petitioner could have been notified that the Parole Board's decision had been affirmed on administrative appeal. Petitioner had one year from that date, or until July 13, 2009, to file his habeas petition.

In opposition to the petition, Respondent submits that the statute of limitations commenced four months after November 13, 2007 (the date Petitioner filed his notice of appeal with the Appeals Unit), or on March 13, 2008. See Resp't Mem. of Law at 18. The Court rejects this argument insofar as 9 N.Y.C.R.R. § 8006.4[c], which governs the determination of administration appeals, provides, in pertinent part, that, "[s]hould the appeals unit fail to issue its findings and recommendation within four months of **the date that the perfected appeal was received,** the appellant may deem this administrative remedy to have been exhausted, and thereupon seek judicial review of the underlying determination from which the appeal was taken." 9 N.Y.C.R.R. § 8006.4[c] (emphasis added). In this case, the perfected appeal was received by the Appeals Unit on March 13, 2008, and the appeal was therefore deemed exhausted four months after that on July 13, 2008 when the Appeals Unit failed to act on the appeal.[6]

---

[6]

The Court notes that, although Respondent has not alleged so, June 1, 2007 or October 31, 2007, could also be considered as the date when Petitioner was notified that the administrative decision(s) relating to the revocation of his

-13-

Turning to Petitioner's argument, he offers a different start date altogether, and maintains that the statute of limitations began to run on June 28, 2011, the date the New York Court of Appeals denied leave to appeal the dismissal of his Article 78 petition. See Pet'r Reply at p 4-12. Petitioner reasons that June 28, 2011 is the appropriate start date for the limitations period because the claims raised in the Article 78 petition are "completely unrelated to the parole board's discretionary release appeal of October 2007." Supplemental Reply at p 3, ¶ 8. The Court finds Petitioner's argument unavailing and his position curious, given that the record clearly reflects that he challenged the Parole Board's October 31, 2007 determination in his Article 78 proceeding, and given that, as a conceptual matter, a state proceeding brought pursuant to CPLR Section 78 is one which specifically allows plaintiffs in New York to challenge administrative determinations. See Resp't Ex. A at p 9, ¶ 3. Accordingly, the Court rejects Petitioner's argument and finds no basis to conclude that the statute of limitations commenced on June 28, 2011.

## (B) Statutory Tolling

Title 28, Section 2244(d) provides that the limitations period is tolled in "[t]he time during which a properly filed application

---

parole became final. Nonetheless, given the complex factual background of this case, the Court gives Petitioner the benefit of the later date, and finds that July 13, 2008, is the appropriate date that the statute of limitations began to run.

for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. 2244(d)(2); see also Fernandez v. Artuz, 402 F.3d 111, 116 (2d Cir. 2005).

Here, Petitioner filed an Article 78 petition on December 23, 2008, 163 days after the statute of limitations had begun to run on July 13, 2008, which tolled the statute of limitations. See e.g., McPherson v. Burge, No. 9:06 Civ. 1076 (GTS/VEB), 2009 U.S. Dist. LEXIS 126805, 2009 WL 1293342, at *7 (N.D.N.Y. January 27, 2009) (one-year statute of limitations statutorily tolled during pendency of habeas petitioner's filed Article 78 proceeding). In other words, at the time he filed the Article 78 petition, Petitioner had 202 days remaining in the one-year limitations period.

The limitations period was tolled during the pendency of the Article 78 petition, or until June 28, 2011, when the New York court of appeals denied leave to appeal the dismissal of the Article 78 petition. The limitations period then ran for another 196 days, from June 28, 2011, until January 10, 2012, the date of Petitioner's federal habeas petition. Accordingly, because the limitations period ran for an additional 196 days, and Petitioner had 202 days remaining in the limitations period, the habeas petition was timely filed.

Petitioner maintains that, in addition to the Article 78 petition, a motion to vacate, filed on or about November 30, 2007,[7] in Rockland County Court challenging his 2007 conviction also tolled the statute of limitations. See Pet'r Reply at p 11-12; Pet'r Supplemental Reply at p 1-2. Respondent counters, and argues that said motion, which challenged solely Petitioner's underlying conviction in Rockland County for second-degree attempted criminal possession of a forged instrument on the basis that he received ineffective assistance of counsel in conjunction with his guilty plea, did not work to toll the limitations period because it did not challenge the administrative decisions of the Division of Parole revoking Petitioner's parole. See Resp't Supplemental Mem. of Law. The Court agrees.

Section 2244(d)(2) "by its plain language" tolls "the limitations period only for those applications that seek review of part or all of the pertinent judgment." Collins v. Ercole, 667 F.3d 247, 251 (2d Cir. 2012); see also Hodge v. Greiner, 269 F.3d 104, 107 (2d Cir. 2001). Here, the "pertinent judgment" is the Division of Parole's administrative decisions related to the revocation of Petitioner's parole. Petitioner did not directly challenge said decisions in his motion to vacate. Rather, in his motion, Petitioner sought to vacate his 2007 judgment of conviction

---

[7]

The supplemental records submitted by Respondent (Dkt. No. 15) reflect that the county court denied motion and Petitioner sought leave to appeal, which was denied on August 25, 2008.

on the basis that he received ineffective assistance of counsel with respect to his guilty plea. In short, Petitioner's motion to vacate did not constitute an application for review of the "pertinent judgment" within the meaning of § 2244(d)(2). As Respondent points out, Collins is instructive on this issue. See Resp't Supplemental Mem. of Law at 3-4. In Collins, the habeas petitioner argued that his Article 78 petition -- which asserted that the DOCS had wrongly determined that his most recent sentence should run consecutively, rather than concurrently, to a separate previous sentence -- tolled the AEDPA statute of limitations. See Collins, 667 F.3d at 250. The Court of Appeals rejected this argument, finding that the "Petitioner did not challenge any aspect of his 2001 conviction or sentence. Rather, he argued that DOCS . . . wrongly determined that his unchallenged 2001 sentence should run consecutively, rather than concurrently, to a previous unchallenged sentence imposed pursuant to a separate conviction for robbery." Id. "An application seeking such relief," the Court concluded, "is not an application for review of the judgment itself" within the meaning of § 2254(d)(2). Id. at 251. Here, Petitioner's motion to vacate challenging his 2007 judgment of conviction on the basis of ineffective assistance of counsel did not seek review or reconsideration of the pertinent judgment so as to toll the statute of limitations under § 2254(d)(2).

The Court now turns to the merits of the petition, and finds that habeas corpus relief is not warranted.

## V. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).

In order to exhaust claims stemming from a denial of parole under New York law, a habeas petitioner must first file an administrative appeal with the Division of Parole's Appeals Unit. Morel v. Thomas, No. 02 CV 9622(HB), 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *2 n.3 (S.D.N.Y. June 26, 2003) (citing N.Y. Comp. Codes. R. & Regs. tit. 9, § 8006.1). If that appeal is denied, he must seek relief in New York State Supreme Court pursuant to CPLR Article 78. Id. (citing Desire v. New York Division of Parole, 2001 U.S. Dist. LEXIS 13784, at *6 (S.D.N.Y. Aug. 22, 2001)). Assuming his Article 78 petition is denied, the inmate must then appeal the denial to New York's intermediate appellate court, the Appellate Division. See Morel, 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *2 n. 3 ("Morel did appeal his

denial to the Appeals Unit, and he also filed an appeal in New York Supreme Court pursuant to Article 78.).

Here, Petitioner properly raised his habeas claims in the state courts. Petitioner filed an administrative appeal with the Division of Parole's Appeals Unit, which was timely perfected on March 13, 2008. See Resp't Ex. A at attached D, E. The Appeals Unit did not rule on the appeal, and the appeal was therefore deemed exhausted after four months. See 9 N.Y.C.R.R. § 8006.4[c]. Petitioner filed an Article 78 petition, which was denied. Petitioner then appealed the denial, which was denied. He sought leave to appeal, which was denied by the New York Court of Appeals on June 28, 2011. See Resp't Exs. N, Q, R, S, V. Accordingly, Petitioner's claims are exhausted and are properly before this Court.

## VI. The AEDPA Standard of Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

§ 2254(d)(1)-(2). In this case, Petitioner's claims were adjudicated on the merits in the state court, and the AEDPA standard of review therefore applies. Under that standard, Petitioner's claims are meritless.

## VII. Analysis of the Petition

### 1. Due Process Claim

At ground one of the petition, Petitioner claims that he is entitled to habeas relief on the basis of a "constitutional and statutory due process violation." In support of this claim, he sets forth various arguments all of which revolve around and/or involve the allegedly improper revocation of his parole. Specifically, he argues that the process afforded him by the State of New York did not comport with the requirements of due process set forth in <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972), insofar as he was deprived of a final parole revocation hearing. <u>See</u> Pet., Attach. at 3-5; Pet'r Reply at p 13-33; <u>see also</u> Pet'r Supplemental Reply. As discussed below, this claim is meritless.

Initially, to the extent Petitioner's "due process" claim is based upon and/or derived from perceived violations of state law -- namely particular sections of New York's Executive Law -- the claim is not cognizable on federal habeas review and is denied on that basis. <u>See, e.g.</u>, <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law"); <u>Vasquez v. Walker</u>, 2004 U.S. Dist. LEXIS 4830, 2004 WL

594646, at *4 (S.D.N.Y. Mar. 25, 2004) ("[v]iolations of state statutory rights are not reviewable by federal habeas courts").

Similarly, Petitioner's claim that the State's failure to comply with the two-step process set forth in Morrissey violates his federal due process rights, said claim is also meritless and provides no basis for habeas relief. In Morrissey v. Brewer, 408 U.S. at 482, the Supreme Court held that the requirements of due process apply to the revocation of parole. The Court established two criteria with regard to the process that is due. First, there must be a preliminary hearing "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." Id. at 485. Second, there must be a revocation hearing, if desired by the parolee, that "lead[s] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." Id. at 488.

In the instant case, Petitioner claims that he was not provided with a final hearing in violation of the second-step of the process set forth in Morrissey. Petitioner, however, was not provided a final hearing because, under New York law, his

-21-

conviction on a new felony charge automatically required revocation of his parole. See Executive Law § 259-i(3)(d)(iii) ("when a parolee . . . has been convicted of a new felony committed while under his present parole . . . and a new indeterminate sentence has been imposed, the board's rules shall provide for a final declaration of delinquency."). Under such circumstances, due process does not require a final hearing. In Alevras v. Neubert, 727 F. Supp. 852 (S.D.N.Y. 1990), the court discussed the import of the Morrissey decision in light of New York's Executive Law provisions. Speaking of the requirements in Morrissey, the court held:

> Those requirements were set forth in the context of parolees suffering revocation based on charges made by their parole officers, and theretofore not established as true by any court or administrative body. In Black v. Romano, 471 U.S. 606, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985), . . . the Court stated that Morrissey did not consider the hearing requirements of "a revocation proceeding in which the fact finder was required by law to order incarceration upon finding that the defendant had violated a condition of . . . parole . . . . Thus, the Court's discussion of the importance of the informed exercise of discretion did not amount to a holding that the factfinder in a revocation proceeding must, as a matter of due process, be granted discretion to continue . . . parole.

Alevras, 727 F.Supp. at 853.

Because revocation is based upon a conviction on new felony charges, "the requirements of establishing probable cause and then an actual violation of parole have been satisfied by the

-22-

[individual's] convictions. The requirement that [he] have an opportunity to show 'that circumstances in mitigation suggest that the violation does not warrant revocation,' [as set out in Morrissey] has been made unnecessary by the New York State Legislature's determination that revocation should be automatic when the parolee is convicted of a felony while on conditional release." Id. Under these circumstances, there is no need to conduct a final hearing. Keyes v. Juul, 270 F.Supp.2d 327, 329 (E.D.N.Y. 2003) (Where, as here, a parolee is arrested and convicted of a new crime, the need for a final hearing to protect a parolee's due process rights by determining if the parolee has in fact "violated one or more of the conditions of release in an important respect" evaporates because the requirements of due process are satisfied either by the trial·underlying the parolee's conviction or waived by his plea of guilty). These statutory provisions have withstood constitutional challenge. See Alevras, 727 F.Supp. at 853 ("[t]here is nothing constitutionally improper in the Legislature's determination."); People ex rel. Maggio v. Casscles, 28 N.Y.2d 415, 418 (1971) ("The conviction of another crime . . . is adequate, in and of itself, to support a revocation, and, in such cases, a new inquiry is hardly necessary."); Pickens v. Butler, 814 F.2d 237, 239 (5th Cir.1987) ("Morrissey did not hold that a state is prohibited from declaring that parole will be automatically revoked for serious violations such as conviction of

-23-

a felony.")); <u>People ex rel. Harris v. Sullivan</u>, 74 N.Y.2d 305, 308 (1989)(Under New York Law, a parolee convicted of committing a new felony and sentenced to an indeterminate term of imprisonment is not entitled to a final revocation hearing because they are subject to revocation of parole by operation of law without any hearing.).

In this case, Petitioner's federal due process rights under <u>Morrissey</u> were not violated when the Division of Parole failed to conduct a final parole revocation hearing subsequent to his 2007 conviction. The record clearly demonstrates -- and Petitioner does not dispute -- that he was convicted of a new felony in 2007 and was sentenced to an indeterminate term of 1½ to 3 years imprisonment. The 2007 felony was committed while he was on parole stemming from his 1992 conviction, and his parole was therefore revoked by operation of law. Since Petitioner was therefore not entitled to a final revocation hearing, his claim that his parole was not properly revoked because he never had such a final hearing is necessarily without merit.

Accordingly, Petitioner's claim is meritless and does not warrant habeas relief. It cannot be said therefore that the state court's adjudication of this claim contravened or unreasonably applied clearly established Supreme Court law. The claim is denied in its entirety.

## 2.   Equal Protection Claim

At ground two of the petition, Petitioner claims that his equal protection rights were violated.  Specifically, he claims that New York parolees who are convicted of a new felony in New York (such as himself) do not receive a final parole revocation hearing, while New York parolees who are convicted of a new felony in another state are given a parole revocation hearing to determine whether and for how long they should be returned to prison.  See Pet., Attach. at 5-7; Pet'r Reply at p 34-37.  As discussed below, this claim is meritless.

As an initial matter, the Court notes that Petitioner frames this claim in the habeas petition as an equal protection violation and expressly refers to it as such in paragraph 33 of his Reply. However, in the section of his Reply entitled "Reply to Respondent's Opposition - Point II" (paragraphs 33-36), he appears to be raising several of the same arguments that he raised in his due process claim, namely, that the State's failure to conduct a final parole revocation hearing violated his constitutional rights under the second-step set forth in Morrissey.  To the extent he is raising the same issues/arguments he raised in his due process claim, but has simply "repackaged" them under the guise of an alleged equal protection violation, said issues/arguments have already been addressed (see discussion supra) and found to be

meritless. To the extent he is raising a Fourteenth Amendment equal protection claim, that claim is meritless.

Under the Equal Protection Clause of the Fourteenth Amendment, "all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). However, "[a] legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." Plyler v. Doe, 457 U.S. 202, 216 (1982). "Thus, the Supreme Court has held that - unless the legislature utilizes a classification that is inherently invidious because it disadvantages a suspect class, or because it infringes upon the exercise of a fundamental right - [courts must] exercise only a limited review power over the acts of legislatures." Hayden v. Paterson, 594 F.3d 150, 169 (2d Cir. 2010) (citing Plyler, 457 U.S. at 216-17). "Under this limited review power, [courts] will uphold forms of state action under the Equal Protection Clause so long as the classification at issue bears some rational relationship to a legitimate state interest." Id. (citing Plyler, 457 U.S. at 216). Here, the rational basis standard applies, because Petitioner does not allege purposeful discriminatory treatment based on his membership in a suspect class or an infringement upon the exercise of his fundamental rights.

Thus, the relevant legislation "is presumed to be valid." Cleburne, 473 U.S. at 440.

Petitioner has not rebutted that presumption of rationality. Moreover, in People v. ex rel. Harris v. Sullivan, 74 N.Y.2d 305 (1989), the New York Court of Appeals found a rational basis for the particular parole revocation statute at issue here. The Harris court explained that, "[a]s a general rule, a parolee detained in New York for allegedly violating parole is entitled to a preliminary hearing within 15 days of the execution of the parole warrant (Executive Law § 259-i[3][c][i]) and to a final revocation hearing within 90 days of the preliminary hearing (Executive Law § 259-i[3][f][i])." Harris, 74 N.Y.2d at 308. However, "a parolee convicted of committing a new felony and sentenced to an indeterminate term is not even entitled to a final revocation hearing," but is rather "subject to revocation of parole by operation of law without any hearing." Id. "The dispensation from hearing is the exception from the general requirement and cannot, under its enacted wording, be applicable against parolees subsequently convicted and sentenced from an out-of-State felony. Unlike a parolee convicted for a new felony and serving a new New York indeterminate sentence, the parolee who served a felony sentence outside New York still needs a new release consideration date to be set by the Parole Board by way of the timely final parole revocation hearing procedural mechanism." Id. at 309.

Indeed, the <u>Harris</u> court explained the legislative basis for this exception:

> The legislative history of subdivision (3)(d)(iii) of Executive Law § 259-i — the revocation hearing exemption — confirms that the exception was intended to dispense with the requirement of a final revocation hearing in only the one instance where the hearing served no apparent purpose — that is, where the parolee has been convicted of a new felony and has been sentenced to a new indeterminate sentence. In those circumstances, a final parole revocation hearing would be a vain gesture because no fact finding by the Board of Parole would be necessary to ascertain that the parolee has in fact violated the conditions of his parole. The court of conviction and sentence would have already indisputably established that reality. Additionally, when a parolee is convicted of a new New York felony and a new indeterminate sentence is imposed, a final parole revocation hearing is not needed to fix the parolee's reappearance before the Board because the violator's reappearance date is automatically fixed by law at the time of sentencing for the new felony (Penal Law § 70.00[3]; § 70.25[2-a]; Executive Law § 259-i[3][d]).

<u>Harris</u>, 74 N.Y.2d at 310.

Given the rational basis of the statute challenged by Petitioner, the state court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. The claim is therefore denied in its entirety.

**VI. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied

and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     January 22, 2013
           Rochester, New York

-29-

EXHIBIT "C"

John Santiago, 07A1732
Orleans Correctional Facility
3531 Gaines Basin Road
------------------ Albion, New York 14411-9199 ------------------

February 14, 2013

Chambers Of
Honorable Michael A. Telesca
272 United States Courthouse
100 State Street
Rochester, New York 14614

Re: 12 -cv- 00133 (MAT)

Dear Hon. Telesca:

Enclosed, please find a motion for reconsideration pursuant to the Federal Rules of Civil Procedure, rule 59(e), to alter and/or amend a prior judgment entered by this Court on January 22, 2013. I am of the opinion that the Court has misplaced my contentions as presented in the writ for habeas corpus, and as such, I respectfully ask that you reconsider your prior judgment based on the information in the accompanying motion.

I would like to thank you in advance for your time and consideration on this matter.

Sincerely,

John Santiago, #07A1732

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
In the Matter of the Application of

JOHN SANTIAGO,
Petitioner,

                              MOTION TO ALTER OR AMEND
                              JUDGMENT, PURSUANT TO
-agaist-                       FED. RULES CIV. PROC.
                              59(e), 28 U.S.C.A.

DAVID UNGER, SUPERINTENDENT,
Respondent,                       No.# 12 -cv- 00133 (MAT)

---

## RECONSIDERATION OF DECISION AND ORDER:

**1).** Petitioner moves for reconsideration pursuant to the
Federal Rules of Civil Procedure, Rule 59(e) to alter or amend a
prior Decision and Order entered on January 22, 2013, denying
petitioner's writ for habeas corpus relief.

**2).** The motion for reconsideration pursuant to 59(e) is
" a motion to alter or amend a judgment and must be filed no later
than 28 days after the entry of the judgment." Subsequently, the
instant application has been instituted within the statutory time
frame and thereby making the motion a timely one.

**3).** A motion to alter or amend a judgment may be granted to
a party for one of the following reasons:

        **a).** Accommodate an intervening change in law
        **b).** Account for new evidence not available at trial
        **c).** Correct clear error of law, or
        **d).** Prevent manifest injustice.

4). Nonetheless, a motion to alter or amend a judgment does not permit a losing party to present facts that could have been raised earlier. It should not be used to relitigate old matters, raise new arguments, or present evidence that could have been raised prior to the entry of judgment.

5). Here, petitioner is not attempting to relitigate old matters or raise new arguments. Petitioner, instead premise the instant motion on the ground that the Court has clearly misunderstood the principles set forth in **Morrissey v. Brewer, 408 U.S. 471.**

6). As petitioner would illustrate, this Court has rendered a clear error of law as set under Supreme Court precedent, and as such, the risk of a manifest injustice warrants this Court to alter or amend its prior decision and order and thereby, sparing the parties and Appellate Courts the burden of review.

### CLEAR ERROR OF LAW - MANIFEST INJUSTICE:

7). Petitioner's claim presented a due process violation pursuant to Federally established law as set by Supreme Court precedent, **Morrisssey v. Brewer**, supra. In that regard, petitioner contended that under **Morrissey**, a "two-step" due process **"exist within"** the final revocation hearing. See, Division of Parole, policy and procedure manual #9212.00 pg. 9 of 13, annexed hereto as **Exhibit A.**

**8).** Unfortunately, this Court misplaced petitioner's claim and concluded that the "two-step" due process consisted of a "Preliminary hearing" and a "Final Revocation hearing," and rationalized that petitioner's parole was not improperly revoked because he did not have a parole final revocation hearing. See, **Decision and Order, pg. 21, 24.**

**9).** As a result, this Court has distorted petitioner's claim and has failed to address petitioner's due process claim of the **"second-step"** (dispositional phase, time assessment or penalty) **"within"** the final revocation hearing and how the dispensation of this "sentencing stage" does not violate his due process right in light of **Morrissey v. Brewer.**

**10).** It is clear that in every litigation whether criminal, civil or administrative, a "two-step" due process is required, that is, a "Fact Finding and Disposition," a "Judgment and Sentence." Why is it, under the current circumstances the Court refuses to address this important stage of petitioner's deprivation of liberty. Petitioner is required by law to have a reasonable expectation of finality with respect to a penalty for his parole violation. See, **Matter of Beattie v. N.Y.S. Bd. of Parole, 39 N.Y.2d 445, 447 (1976).**

**11).** Nor, was petitioner's argument whether he's entitled to the "first-step" (fact finding) of the final revocation hearing to determine whether he violated the conditions of his parole or not, as the Court has assessed. See, **Decision and Order, pg. 22, 23.** Petitioner's claim is that the violation of parole has been established by means of the 2007 conviction. Therefore, satisfying the "fist-step"

of the "two-step" due process within the final revocation hearing. See, Executive Law 259-i (3)(d)(iii). However, the "second-step" is left unresolved, nor is there any authority addressing how the dispensation of the "second-step" within the final revocation hearing survive constitutional scrutiny.

12). In the cases cited by the Court, those cases dealt with parolee's arguing that their parole had been revoked without the "first-step" (fact finding) of the final revocation hearing. Under those circumstances, petitioner agrees that a final revocation hearing with respect to the "fact finding stage" is unnecessary as the new conviction established that the parolee violated the conditions of his/her parole and therefore, the revocation of parole is appropriate without a hearing. That is, no fact finding is required to determine whether the parolee violated the conditions of his parole. See, **Maggio v. Casscles, 28 N.Y.2d 415, 418 (1971)**. See also, **Decision and Order pg. 23**. However, as previously emphasized on, petitioner does not contest the "fact finding stage" of the final revocation hearing. Petitioner only claims that the "second-step" of the final revocation hearing is constitutionally warranted in order to adjudicate petitioner on the 8 years, 2 months and 20 days owed on the undischarged term. See, **Beattie v. N.Y.S. Bd. of Parole, 39 N.Y.2d 445, 447**.

13). In **Morrissey**, the Supreme Court, ruled that, "...[t]he first-step in a revocation decision (not a preliminary hearing) thus involves a wholly retrospective factual question: **whether the parolee**

(4)

has in fact acted in violation of one or more conditions of his
parole. Only if it is determine that the parolee did violate
the conditions does the <u>second question arise:</u> should the parolee
be recommitted to prison or should other steps be taken to protect
society and improve chances of rehabilitation? See, **U.S. Carson v.
Taylor, 403 F. Supp. 747, 751 (S.D.N.Y. 1975); Rastelli v. Warden,
Metro. Corr. Center, 610 F. Supp. 961, 978 (S.D.N.Y. 1985)** (" The
finding of violation...is only a first step. The second, and more
crucial determination is whether the violation warrant returning
the parolee to prison. Due process must attend both stages of the
inquiry." Citing **Morrissey v. Brewer, Id. at 479, 480.** Enclosed as
**Exhibits B, C, and D**, for the Court's convenience as highlighted.

14). In **Mayfield v. Evans, 93 A.D.3d 98, 938 N.Y.S.2d 290
(N.Y.A.D. 1 Dept. 2012)**, the Court, there, concluded that "...[U]nder
**MOrrissey,** due process attaches not only to the proof of violation
stage of the revocation proceeding, but also to the time assessment
stage...Lastly, the **Morrissey** Court not only considered time
assessment to be the 'second step' of the two-part process, it
considered it the more complex step **(408 U.S. at 479-480).** It is
difficult, in light of the aforementioned language in **Morrissey,**
about due process (id. at 488-489) to conclude that the more
complex step does not require due process while the simpler  step
does." **Mayfield, at 298-299.** See annexed hereto as **Exhibit E,** as
highlighted.

15). Under these circumstances, it is difficult for petitioner to ingest the Court's decision and order entered on January 22, 2013 denying his writ. The Court completely distorted petitioner's claim by clearly misinterpreting the "two-step" due process that petitioner presented.

16). Petitioner is not attempting to relitigate whether he violated his parole or not after his 2007 conviction, nor is petitioner attempting to present "mitigating circumstances" that would show that revocation of parole is not warranted. Petitioner merely seeks a "time assessment," "a disposition," or a "sentence," on the revocation of his parole. Petitioner owes 8 years, 2 months and 20 days on parole, however, petitioner has not been adjudicated on the 8 years, 2 months and 20 days. The second step within the final revocation hearing under **Morrissey v. Brewer**, is the proper forum to determine how much time, if any, is to be served under the undischarged term.

17). Therefore, this Court should re-evaluate its determination based on the **"two-step"** due process **"within"** the final revocation hearing and should explain why the dispensation of the second step (dispositional phase) within the final revocation hearing does not offend petitioner's due process entitlement to receive a **"time assessment"** under the mandate of **Morrissey v. Brewer.**

18). May the Court keep in mind, and the author herein emphasize, that petitioner concedes that the "first-step" within the final revocation hearing is unnecessary because the 2007

conviction has established that petitioner has violated the conditions of parole and therefore, the first-step of the final revocation hearing is not required to determine whether he violated. Petitioner only seeks an **"associated sentence"** for his violation. In other words, petitioner has not received a "collateral consequence" for his parole violation. As such, on what grounds does the State of New York continue to deprive petitioner of his liberty if no "associated sentence" for the violation has not been imposed?

**WHEREFORE,** the Court should alter and/or amend its prior judgment on the basis that the Court did not address the contents of the writ, by distorting the "two-step" due process within the final revocation hearing (fact finding and disposition), with the two-step criteria of a "preliminary hearing and a final revocation hearing," and for any other reasons the may deem just and proper under the circumstances.

Date: February, 2013

John Santiago, #07A1732
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411-9199

(7)

EXHIBIT "D"

STATE OF NEW YORK
SUPREME COURT
COUNTY OF FRANKLIN

-------------------------------------------------------------X

In the Matter of the Application of
JOHN SANTIAGO, #07-A-1732,
                                        Petitioner,

for Judgment Pursuant to Article 78          **DECISION AND JUDGMENT**
of the Civil Practice Law and Rules          **RJI #16-1-2008-0735.218**
                                             **INDEX # 2008-1957**
            -against-                        **ORI #NY016015J**

GEORGE B. ALEXANDER, Chairman,
NYS Division of Parole,
                                        Respondent.          MAR - 1 2010

-------------------------------------------------------------X

        This is a proceeding for judgment pursuant to Article 78 of the CPLR that was originated by the petition of John Santiago, verified on December 23, 2008, and filed in the Franklin County Clerk's office on December 29, 2008. Petitioner, who is now an inmate at the Auburn Correctional Facility, is challenging the October 31/November 1, 2007 determination denying him parole, but only to the extent it was directed that he be held for an additional 24 months with a scheduled re-appearance in November of 2009. In this regard petitioner seeks a Court order directing respondent to conduct "... a final revocation hearing at the conclusion of petitioner's intervening [2007] sentence, in accordance with [Executive Law §259-i(3)(d)(iii)] ..."

        The Court issued an Order to Show Cause on January 20, 2009, and received and reviewed respondent's Notice of Motion to dismiss, supported by the Affirmation of Kelly L. Munkwitz, Esq., Assistant Attorney General, dated March 6, 2009. The Court also received and reviewed petitioner's opposing papers, filed in the Franklin County Clerk's office on March 24, 2009. By Decision and Order dated June 23, 2009, respondent's motion was denied and he was directed to serve answering papers. The Court next received and reviewed respondent's Answer, including Confidential Exhibits B and D,

MAR 0 4 2010

denial determination receives a new parole hearing and is again denied discretionary release the pending challenge is rendered moot since inmate has, in effect, already received the appropriate relief in the form of the new hearing. In the case at bar, however, the petitioner does not challenge the October/November 2007 discretionary parole denial determination. Rather, he asserts that upon completion of the maximum term of the 2007 indeterminate sentence (presumably on or about July 4, 2009) his then continuing detention in DOCS custody could no longer be based upon the 24-month hold imposed in connection with the October/November 2007 discretionary parole denial determination but, instead, must be based upon the revocation of his parole and imposition of a delinquent time assessment following a final parole revocation hearing. This proceeding, therefore, can in no sense be considered moot based upon petitioner's September, 2009 Parole Board reappearance and the ensuing denial of discretionary release with an additional 24-month hold.

Turning to the merits, or lack thereof, of the arguments advanced by petitioner in this proceeding, the Court finds that his statutory/regulatory claim of entitlement to formal parole revocation proceedings upon the expiration of the maximum term of his 2007 indeterminate sentence is based upon a fundamentally flawed premise and is therefore rejected. Where, as here, an individual is subject to multiple indeterminate sentences of imprisonment, running consecutively, the respective minimum periods and maximum terms are added pursuant to Penal Law §70.30(1)(b) to yield a single, aggregate indeterminate sentence. An inmate serving such a single, aggregate indeterminate sentence, moreover, remains subject to all of the component sentences for the duration of the aggregate maximum term of imprisonment. *See People v. Buss*, 11 NY3d 553 *and People v. Delk*, 59 AD3d 733. This Court therefore rejects petitioner's assertion that in July of 2009 he completed serving the 3-year maximum term of his

6 of 13

2007 indeterminate sentence and commenced serving the 8 years, 2 months and 20 days remaining against the undischarged maximum term of his 1992 indeterminate sentence.

Upon imposition of petitioner's 2007 indeterminate sentence his parole was revoked by operation of law without the necessity of a parole revocation hearing. *See* Executive Law §259-i(3)(d)(iii), *Meade v. Boucaud*, 67 AD3d 1263 and *Tineo v. New York State Division of Parole*, 14 AD3d 949. Petitioner's next appearance before a Parole Board for discretionary release consideration was governed by the legal requirements of the newly imposed 2007 indeterminate sentence. *See* Executive Law §259-i(3)(d)(iii). Thus petitioner's parole eligibility date was properly calculated as January 4, 2008 and, as acknowledged by petitioner, he properly appeared before a Parole Board in the anticipation of that parole eligibility date in October of 2007. After denying petitioner discretionary release the 2007 Parole Board acted within the limits of its statutory authority in specifying that petitioner would not be reconsidered for parole release for a period of 24 months. *See* Executive Law §259-i(2)(a)(i). Petitioner was not entitled to discretionary parole release consideration prior to the expiration of that 24-month period and, as noted previously, he was not entitled to a parole revocation hearing.

Having determined that petitioner is not entitled to the relief he seeks under the applicable statutory/regulatory scheme, it remains to be determined whether or not the application of that scheme to petitioner's situation constituted an equal protection violation. In this regard the Court initially observes that petitioner's challenge must be examined under the rational basis test since no suspect classification or fundamental right is implicated. "As traditionally formulated, this test requires that a governmental classification be based on some conceivable and valid State interest . . . Thus, the United States Supreme Court has indicated, '[a] statutory discrimination will not be set aside

SANTIAGO
ORLEANS CORRECTI
GAINES BASIN
ALBION, NEW YORK 14411-9199

ORLEANS

CORRECTIONAL FACILITY

045J8306

$3.1

Mailed From

Att: Catherine O'Hagan Wolfe, Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 100007

LEGAL MAIL