# 12-1245-pr(L),

## 13-658-pr(CON), 13-2216-pr(CON)

## United States Court of Appeals

*for the*

## Second Circuit

———◆———

JOHN SANTIAGO,

*Petitioner-Appellant,*

– v. –

D. LaCLAIR, DAVID UNGER, Superintendent,

*Respondents-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND APPENDIX FOR PETITIONER-APPELLANT

LAW OFFICE OF SALLY WASSERMAN
*Attorney for Petitioner-Appellant*
352 Seventh Avenue, 11th Floor
New York, New York 10001
(212) 631-7504

# *TABLE OF CONTENTS*

TABLE OF AUTHORITIES............................................ ii

QUESTION PRESENTED............................................ v

JURISDICTION STATEMENT...................................... vi

PRELIMINARY STATEMENT...................................... vii

STATEMENT OF FACTS............................................ 1

    Introduction......................................................... 1

    The Article 78 Proceedings................................. 2

    The Instant Petition............................................ 6

    The Grant of a Certificate of Appealability...................... 10

ARGUMENT-
NEW YORK STATE'S APPLICATION OF AN AUTOMATIC
REVOCATION STATUTE, CODIFIED IN EXECUTIVE LAW § 259-i (3)
(d) (iii), VIOLATES DUE PROCESS BY OMITTING A DISPOSITIONAL
PHASE AND IN REJECTING THE PETITIONER'S CLAIM THAT THE
AUTOMATIC REVOCATION OF HIS PAROLE STATUS AND THE
CONSEQUENT IMPOSITION OF AN AGGREGATED SENTENCE WAS
UNCONSTITUTIONAL, THE STATE UNREASONABLY APPLIED
SUPREME COURT PRECEDENT AND ISSUED A RULING
CONTRARY THAT PRECEDENT............................................ 11

CONCLUSION-
FOR ALL OF THE FOREGOING REASONS, THIS COURT IS URGED
TO GRANT THE PETITIONER HABEAS CORPUS
RELIEF....................................................................... 28

Certificate of Compliance............................................ 28

# TABLE OF AUTHORITIES

CASES                                                                    PAGES

*Alevras  v. Neubert,*
    727 F. Supp. 2d 852 (S.D.N.Y. 1990) ……........... 7

*Anti-Fascist Committee v. McGrath,*
    341 U.S. 123(1951)……………………….…         20

*Armstrong v. Manzo,*
    830 U.S. 545(1965) …………………………....         17

*Beattie v. New York State Board of Parole,*
    471 U.S. 606 (1985)…………………………..         15

*Bearden v. Georgia,*
    461 U.S. 660 (1983)……………………………..          11

*Black v. Romano,*
    341 U.S. 214 (1951)…………………………...         16, *et seq.*

*Codd v. Velger,*
    429 U.S. 624 (1977)………………………..………         14

*Dent v. West Virginia,*
    129  U.S. 114 (1889)………………………..………         20

*Doe v. Simon,*
    221 F.3d 137 (2d Cir. 2000)…………………..…..         17

*Drayton v. McCall,*
    584 F.3d 1208  (2d Cir. 1978)…………………..…..         17

*Gagnon v. Scarpelli,*
    411 U.S. 778 (1973)…………………..…….…..         17, 22

*Green v. McCall,*
    822 F.2d 284 (2d Cir. 1987) ……………………         16

CASES                                          PAGES

*Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*,
    442 U.S. 1 (1979)………………….………..  8, 11, 22

*Inmates of the Neb. Penal & Corr. Complex*,
    442 U.S. 1 (1979)………………….………..  18

*Inmates of the Neb. Penal & Corr. Complex*,
    442 U.S. 1 (1979)………………….………..  13, 17

*Keyes v. Juul,*
    270 F. Supp. 2d 327 (E.D.N.Y. 2003) ……..........  22

*Lockyer v. Andrade*,
    538 U.S. 63 (2003)……………………………  21

*Mathews v. Eldridge*,
    424 U.S. 319 (1979)………………………………17

*Matter of Santiago v Alexander*,
    80 A.D.3d 1105 (3d Dept. 2011)…………………. 17

*Mayfield v. Evans*,
    93 A.D.3d 98 (1stDept. 2012)…………………  9

*People v. Buss*,
    11 N.Y.3d 553 (2008)…………...……………  12

*People ex rel. Donohoe v. Montanye,*
    35 N.Y.2d 221 (1974)…………...……………  15

*People v. Ford*,
    86 N.Y 2d 397  (1995)…………………..…….  26

*People ex rel. Harris v. Sullivan*
    74 N.Y.2d 305 (1989)…………...……………  15

*Price v. Vincent*,
    538 U.S. 634 (2003)………………………………21

*Morrissey v. Brewer*,
   408 U.S. 471 (1971)…………...………………….. 3, *et seq.*

*O'Quinn v. New York State Bd. of Parole*,
   132 Misc. 2d 92 (N.Y. Co. 1986)………….….….     11

*People ex rel. Harris v Sullivan*,
   74 N.Y. 2d 305 (1989)……………………………. ..     10

*Price v. Vincent*,
   538 U.S. 634 (1990)……………………………….     16

*Williams v. Taylor*,
   529 U.S. 362 (2000)……………………………….     21, 22

*Wilson v. McGinnis*,
   413 F. 3d 196 (2d Cir. 2005)……………………….     27

*Wolf v. McDonnell*,
   418 U.S. 539 (1974)………………………..……….     20

*Yarborough v. Alvarado*,
   541 U.S. 652 (2004)……………………………….     21, 22

STATUTES

*28 USC §2254(d)(1)* ……………………………..…….     16

*N.Y. Exec. L.* § 259-i (3) (d) (iii)………………….. 8, *et seq.*

*N.Y.P.L.* §§ 110/170.25……………………………     9

*N.Y.P.L.* § 70.06…………………………………...….     15

*N.Y.P.L.* § 70.06…………………………….……..     11

*N.Y.P.L.* § 70.25……………………………..……..     14, 15

*N.Y.P.L.* § 70.30……………………………..……..     14

*QUESTION PRESENTED*

WHETHER HABEAS CORPUS RELIEF IS COMPELLED BECAUSE NEW YORK STATE'S AUTOMATIC REVOCATION STATUTE, CODIFIED IN EXECUTIVE LAW § 259-i (3) (d) (iii), VIOLATES DUE PROCESS BY OMITTING A DISPOSITIONAL PHASE, AND, FURTHER, WHETHER IN REJECTING THE PETITIONER'S CLAIM THAT THE CONSEQUENT IMPOSITION OF AN AGGREGATED SENTENCE WAS UNCONSTITUTIONAL, THE STATE UNREASONABLY APPLIED SUPREME COURT PRECEDENT AND ISSUED A RULING CONTRARY THAT PRECEDENT?

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
----------------------------------------------------------x
John Santiago

                  Plaintiff-Appellant, :


      -against-                      :    Docket Numbers
                                          13-658 (L); 13-2126 (Con)
David Ungar, Superintendent,        :
                    Defendant -Appellee.
----------------------------------------------------------x

*JURISDICTION STATEMENT*

      This Court has jurisdiction in this case pursuant to 28 U.S.C. Section 2254. This is an appeal from the dismissal of a habeas corpus petition. A certificate of appealability was granted by this Court on August 22, 2013.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
--------------------------------------------------------x
John Santiago

                    Plaintiff-Appellant, :

      -against-                        :    Docket Numbers
                                          13-658 (L); 13-2126 (Con)
David Ungar, Superintendent,      :
                    Defendant -Appellee.
--------------------------------------------------------x

*BRIEF FOR THE PETITIONER-APPELLANT*
*PRELIMINARY STATEMENT*

The Petitioner John Santiago, a second-felony offender, appeals a

*Decision and  Order* of the United States District Court for the Western

District of New York, filed January 22, 2013 (Telesca, J.), denying him

habeas corpus relief  from a June 1, 2007 Final Declaration of Delinquency

by the New York State Division of Parole whereby the Petitioner, in

*absentia*, was found delinquent as to the conditions of parole  (in connection

with his further arrest and felony conviction), and the maximum expiration

date of his sentence of 1½ to 3 years on the new felony extended by the

addition of approximately eight years of undischarged time remaining on the

indeterminate sentence pronounced upon the Petitioner's prior felony

conviction.   The Petitioner also appeals a further Decision and Order the

United States District Court for the Western District of New York (Telesca, J.), filed May 13, 2013, denying the Petitioner's Motion to Alter or Amend the prior denial of relief.

In the later case, the 2007 case, the Petitioner was convicted, upon a plea of guilt, of an E felony associated with a maximum term of imprisonment of 3½ to 7 years. In the 1992 case, the Petitioner was sentenced to an indeterminate term of imprisonment of 8 to 24 years and paroles after serving some 8 years. At sentence in the 2007 case, in the first mention of the matter in the record, the court pronounced the agreed-upon sentence consecutive to any undischarged portion of the 1992 sentence. The undischarged time on the 1992 sentence was not quantified during the proceedings. This case has been consolidated with the Petitioner's related case, *Santiago v. LaClair*, Docket Number 12-1245. In *Santiago v. LaClair*, the Petitioner sought habeas corpus relief from the 2007 conviction on the basis of counsel's ineffectiveness in failing to advise the Petitioner of the sentencing implications of the undischarged time on his 1992 case. Following the denial of habeas corpus relief by United States District Court for the Southern District of New York (Batts, J.), this Court, on July 5, 2012, granted the Petitioner review of the following issue: "whether petitioner was denied effective assistance of counsel in pleading guilty based on his

counsel's alleged failure to advise him that any term of imprisonment would run consecutively to his undischarged time. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985)."

Following the district court's denial of relief and a certificate of appealability in this case, the Petitioner timely appealed to this Court. On August 22, 2013, this Court consolidated this appeal with *Santiago v. LaClair* appeal and, citing *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003), granted the Petitioner a certificate of appealability on the issue of "whether the state court unreasonably applied *Morrisey v. Brewer*, 408 U.S. 471 (1972), in determining that Appellant's sentence for violating his parole, did not violate due process."

This appeal follows.

## STATEMENT OF FACTS

Introduction

In 1992, John Santiago, hereinafter the Petitioner, was sentenced to an indeterminate term of imprisonment of 8 to 24 years in connection with a New York State conviction with a top count of first-degree manslaughter. In 2000, the Petitioner was released to parole supervision.

In 2006, the Petitioner made purchases in a New York State mall with a forged gift card encoded with a stolen credit card number. By State indictment, the Petitioner was charged with crimes related to the creation, possession and use of the instrument and, in 2007, was sentenced, upon a plea of guilt, to an indeterminate term of imprisonment of 1½ to 3 years. In a Final Declaration of Delinquency issued in June of 2007 by the State Department of Parole, the Petitioner was notified that as a result of the 2007 conviction, perpetrated during parole supervision, the undischarged time left on the 1992 conviction would be added to the maximum on the 2007 sentence. This resulted in an aggregated sentence with a maximum of some 11 years.

This appeal concerns the State's violation of the Petitioner's due process rights by the issuance, in the Petitioner's absence, of the Final Declaration of Delinquency and the automatic extension of the Petitioner's confinement by the 8 years, 2 months, and 20 days of undischarged time on the 1992 case.

<u>The Article 78 Proceeding</u>

In proceeding brought pursuant to Article 78 of the New York State Civil Practice Law and Rules, the Petitioner, citing, amongst other cases, *Morrisey v. Brewer*, 408 U.S. 471 (1972), constitutionally challenged the aggregation of his 2007 sentence and the remaining undischarged time on his 1992 sentence arguing that, the relevant statute mandated that in advance of the imposition of a penalty for the parole violation that was his 2007 conviction, he should have been afforded a proceeding to determine whether he was to be recommitted to prison or whether alternate steps should be taken to both protect society while improving the Petitioner's chances of rehabilitation. The relevant section provides that when a:

"person on post-release supervision has been convicted of a new felony committed while under such supervision and a new indeterminate or determinate sentence has been imposed, the board's rules shall provide for a final declaration of delinquency. The inmate shall then be notified in writing that his release has been revoked on the basis of the new conviction and a copy of the commitment shall accompany said notification. The inmate's next appearance before the board shall be governed by the legal requirements of said new indeterminate or determinate sentence, or shall occur as soon after a final reversal of the conviction as is practicable."

*See, N.Y. EXC. LAW* § 259-i.

After the Petitioner was received back into custody of the New York State Department of Corrections, that department, by applicable of an aggregation statute, codified in New York Penal Law Section 70.30[1](b), added the Petitioner's undischarged term on his earlier 1992 conviction to the maximum term of his 2007 sentence and calculated all of the relevant dates of his sentence, the maximum expiration, the conditional release, and the parole eligibility dates were all calculated on the basis of that aggregation. In the Article 78, the Petitioner contested the aggregation and, citing *Morrissey v. Brewer*, 408 U.S. 471 (1972), argued that he should have been, in advance of the lapse of his 2007 sentence, been afforded the "dispositional phase" of the parole revocation determination that is afforded to him by due process. *WDNY Docket No. 1:12-cv-00133-MAT Document 8-2, page 17*. The Petitioner noted that the condition complained of was not a case of mere semantics. By aggregating sentences in this manner, the State unconstitutionally trampled upon due process. A final revocation hearing has a due process component, argued the Petitioner, while a parole eligibility determination does not. *WDNY Docket No. 1:12-cv-00133-MAT Document 8-2, page 16*.

The aggregation, further argued the Petitioner, effectively invalidated the indeterminate 2007 sentence pronounced by the court upon his plea. *WDNY Docket No. 1:12-cv-00133-MAT Document 8-2, page 21*. Had a separate sentence been pronounced for the parole violation, the Petitioner could only have been sanctioned

one time for the violation. By aggregating his sentence, the State was able, in a manner that the Petitioner described as "arbitrary" and "capricious," to detain him, without any findings as to the circumstances or gravity of the underlying parole violation, long after the expiration of the maximum three-year term of 2007 sentence. *WDNY Docket No. 1:12-cv-00133-MAT Document 8-2, page 21-22.* In the absence of the performance of *any* dispositional-phase determination in advance of the expiration of the sentence pronounced by the court in 2007 upon his plea, argued the Petitioner, his continued incarceration after the expiration of the three-year maximum of that sentence was unconstitutional. *WDNY Docket No. 1:12-cv-00133-MAT Document 8-2, page 20-21.*

In a *Decision and Judgment* dated February 24, 2010, the State court dismissed the Article 78 (Feldstein, J.) and rejected the petitioner's constitutional challenge to the application of Executive Law §259-i(3)(d)(iii). The court reasoned that the Petitioner's:

"statutory/regulatory claim of entitlement to formal parole revocation proceedings upon the expiration of the maximum term of his 2007 indeterminate sentence is based upon a fundamentally flawed premises and is therefore rejected. Where, as here, an individual is subject to multiple indeterminate sentences of imprisonment, running consecutively, the respective minimum periods and maximum terms are added pursuant to Penal Law §70.30(1)(b) to yield a single,

aggregate indeterminate sentence. An inmate serving such a single, aggregate indeterminate sentence, moreover, remains subject to all of the component sentences for the duration of the aggregate maximum term."

*WDNY Docket No. 1:12-cv-00133-MAT Document 8-3, page 274.*

The Petitioner appealed. In an *Opinion* issued January 27, 2011, the New York State Supreme Court, Appellate Division, Third Department, affirmed the dismissal, writing:

"We are unpersuaded by petitioner's contention that, absent any further parole revocation procedures with regard to his parole violation, it was improper to continue his incarceration past the expiration of his March 2007 sentence. Upon petitioner's conviction of the new felony while on parole, his parole release was properly revoked by operation of law without a hearing (*see People ex rel. Harris v Sullivan*, 74 NY2d 305[1989]; *Matter of Meade v Boucaud*, 67 AD3d 1263, 1264, [2009]; People ex rel. Melendez v Bennett, 291 AD2d 590, 591 [2002], *lv denied* 98 NY2d 602 [2002]). Furthermore, pursuant to the provisions of Penal Law § 70.30 (1) (b), the minimum and maximum sentences of the two indeterminate consecutive sentences are, "with certain limitations not relevant here, … added to form aggregate minimum and aggregate maximum wholes" (*People v Buss*, 11 NY3d 553, 557 [2008]). Therefore, petitioner's eligibility for parole release and appearance before the Board are "governed by the legal requirements of said new indeterminate … sentence" (Executive Law § 259-i [3] [d] [iii]). Inasmuch as petitioner's sentence was properly aggregated using this method, there was no error in continuing petitioner's incarceration past the expiration of his 2007 sentence and imposing a 24-month hold on his next appearance before the Board."

A. 4-5.

Leave to appeal was denied by the State's highest court on June 28, 2011. A. 6.

<u>The Instant Petition</u>

The Petitioner timely filed the instant petition and argued, amongst other claims, as he had before the state courts, that the automatic aggregation of two sentences, the 2007 sentence and the full amount of time left on his 1992 sentence, violated due process and, further, that his continued incarceration by the State of New York after the lapse of the 2007 sentence was unconstitutional. *WDNY Docket No. 1:12-cv-00133-MAT Document 1, page 9.* As the Petitioner summarized, "a final revocation hearing has a 'two-step due process' attached to it, and that although, petitioner incurred a new conviction while under parole supervision, that New York Executive Law 259-i(3)(d)(iii) and the Court of Appeal in New York, only dispensed of the 'first step' of the <u>two-step due process</u> of the final revocation hearing." *Docket No. 1:12-cv-00133-MAT, Document 1, Page 8-9* (emphasis in the original). "Therefore," argued the Petitioner, he was constitutionally entitled to a "dispositional phase" of the final revocation process, so as to determine the time, if any, he is to serve under his undischarged term." *Docket No. 1:12-cv-00133-MAT, Document 1, Pages 8-9.*

In a *Decision and Order*, dated January 22, 2013, the district court denied habeas corpus relief (Telesca, J.). Rejecting the instant claim, the court acknowledged that New York had applied both the Executive Law § 259-(i) and Penal Law § 70.30 to the Petitioner's case but failed to recognize that the

application of those statutes, in tandem, violated due process:

"Petitioner claims that he was not provided with a final hearing in violation of the second-step of the process set forth in *Morrissey*. Petitioner, however, was not provided a final hearing because, under New York law, his conviction on a new felony charge automatically required revocation of his parole. . . . Under such circumstances, due process does not require a final hearing."

A.40-41, *citing*, *Executive Law* § 259-i(3)(d)(iii).

Quoting *Alevras v. Neubert*, 727 F. Supp. 852 (S.D.N.Y. 1990), as to the demands of due process as set forth in *Morrissey v. Brewer*, the court continued:

"Those requirements were set forth in the context of parolees suffering revocation based on charges made by their parole officers, and theretofore not established as true by any court or administrative body. In *Black v. Romano*, 471 U.S. 606 (1985), . . . the Court stated that *Morrissey* did not consider the hearing requirements of 'a revocation proceeding in which the fact finder was required by law to order incarceration upon finding that the defendant had violated a condition of . . . parole . . . . Thus, the Court's discussion of the importance of the informed exercise of discretion did not amount to a holding that the factfinder in a revocation proceeding must, as a matter of due process, be granted discretion to continue . . . parole.'"

A. 41, *quoting*, 727 F. Supp. at 853.

The Petitioner brought a motion to Alter or Amend pursuant to Fed R. Civ. P. 59(e) and therein acknowledged that the fact of the violation was indeed established by his 2007 conviction. The Petitioner, once again citing *Morrisey v. Brewer*, argued that it was a violation of his constitutional right to due process to consign him, absent a dispositional hearing, to the full 8 years, 2 months and 20 days owed on the undischarged term. At this second step, argued the Petitioner, the State was required to evaluate whether to recommit him to prison or whether other steps could be taken to protect society while still improving his chances of rehabilitation. *See*, 1:12-cv-00133-MAT *Document 21*.

Moreover, argued the Petitioner, as he had before the State of New York, though the statute itself was not, objectively, drafted in an inherently unconstitutional manner, the statute was unconstitutional in its application. The relevant statute provides that when an inmate such as the Petitioner, a person on some form on post-release supervision, is convicted of a new felony committed while under supervision, "and a new indeterminate or determinate sentence has been imposed," the inmate is to be notified in writing that his release has been revoked and that the inmate's "next appearance before the board shall be governed by the legal requirements of said *new* indeterminate or determinate sentence." *See*, *Executive Law* § 259-i(3)(d)(iii). Thus, it was at the appearance before the Parole Board in connection with the March 2007 sentence that the Petitioner should have

been afforded the dispositional phase of the revocation process, the stage at which it is determined what portion of the undischarged term, if any, he was to serve in connection with the parole violation.

By improperly aggregating the two "sentences," the March 2007 sentence and the undischarged term of the 1992 sentence, pursuant to Penal Law Section 70.30(1)(b), New York, in the application of *Executive Law* § 259-i(3)(d)(iii), unconstitutionally took from the Petitioner, and litigants similarly situated, the right to meaningfully challenge the automatic assessment of the whole of the undischarged term as a penalty for *any* parole violation. As the Supreme Court made clear in *Morrissey*, and as New York has recognized, a prisoner hoping for parole does not have a right protected by the due process clause. "In contrast to a prisoner who merely hopes to be afforded parole, however, a parolee who, after having been granted supervised release, is accused of violating the terms of parole, is accorded due process rights, and the state must afford the alleged violator a meaningful opportunity to be heard." *Mayfield v. Evans*, 93 A.D. 3d 98 (1st Dept. 2012). Before depriving the Petitioner of his liberty as a parolee, it was thus incumbent upon the State to afford him a dispositional phase, some form of actual process where the appropriate term of incarceration, from 0 to the whole of the some 8 years of undischarged time left on the 1992 sentence, would be determined in light of the nature and gravity of the admitted parole violation.

In a *Decision and Order* issued May 13, 2013, the district court denied the Petitioner's motion and, further, denied the Petitioner a certificate of appealability. The court failed address the point that the Petitioner had consistently argued, to wit, that New York State unconstitutionally failed to afford him due process in advance of the imposition of a term of imprisonment for the whole of the undischarged term of his 1992 sentence. Rather, the court reasoned that the "to the extent that the Petitioner's 'due process' claim was based upon or derived from perceived violations of state law (which in fact it appears to have been), that claim was not cognizable on habeas review." A.56.

<u>The Grant of a Certificate of Appealability</u>

The Petitioner appealed the denial of relief. On August 22, 2013, this Court consolidated this appeal with *Santiago v. LaClair* appeal and, citing *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003), granted the Petitioner a certificate of appealability on the issue of "whether the state court unreasonably applied *Morrisey v. Brewer*, 408 U.S. 471 (1972), in determining that Appellant's sentence for violating his parole, did not violate due process."

**ARGUMENT**

**NEW YORK STATE'S APPLICATION OF AN AUTOMATIC REVOCATION STATUTE, CODIFIED IN EXECUTIVE LAW § 259-i (3) (d) (iii), VIOLATES DUE PROCESS BY OMITTING A DISPOSITIONAL PHASE AND IN REJECTING THE PETITIONER'S CLAIM THAT THE AUTOMATIC REVOCATION OF HIS PAROLE STATUS AND THE CONSEQUENT IMPOSITION OF AN AGGREGATED SENTENCE WAS UNCONSTITUTIONAL, THE STATE UNREASONABLY APPLIED SUPREME COURT PRECEDENT AND ISSUED A RULING CONTRARY THAT PRECEDENT.**

*A.* Introduction

There is no constitutional right to parole. However, the offer of parole by a state creates a protected liberty interest in parole. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex,* 442 U.S. 1, 7 (1979). To comport with due process, the parole-revocation determination requires two decisions: "whether the parolee in fact acted in violation of one or more conditions of parole and whether the parolee should be recommitted either for his or society's benefit." 442 U.S. at 9, *quoting,* *Morrissey v. Brewer*, 408 U.S. 471, 479-80 (1971).

In New York State, parole revocation is mandated following a new felony conviction. *O'Quinn v. New York State Bd. of Parole*, 132 Misc. 2d 92 (N.Y. Co. 1986), *citing, Executive Law* § 259-i (3) (d) (iii). After revocation the inmate, "notified in writing that his release has been revoked on the basis of the new conviction and a copy of the commitment shall accompany said notification." *Executive Law* § 259-i (3) (d) (iii). The inmate is then re-sentenced, in effect, to an

aggregated sentence comprised of the new sentence pronounced and the whole of the undischarged time owed on the earlier sentence. *People v Buss*, 11 N.Y.3d 553, 557 (2008). Thereafter, this aggregated sentence is used, as it was in this case, "for the ready calculation of parole eligibility." 11 N.Y. 3d at 557. The creation and thereafter the use of the aggregated sentence in this manner unconstitutionally works to extinguish a parolee's interest in his continued liberty.

The Supreme Court made clear in *Morrissey* and New York has acknowledged, that, unlike a prisoner who is hopeful for parole but does not have a right protected by the due process clause, "a parolee who, after having been granted supervised release, is accused of violating the terms of parole, is accorded due process rights, and the state must afford the alleged violator a meaningful opportunity to be heard." *Mayfield v. Evans*, 93 A.D. 3d 98 (1ˢᵗ Dept. 2012), *citing, Morrissey v Brewer*, 408 U.S. 471, 484 (1972). Thus, though "a parolee's liberty is a conditional one, it is a 'valuable' liberty and, as such, it is within the protection of the *Fourteenth Amendment." Id. Mayfield,* admittedly, dealt with a related but different situation. There, the violation was not, as it was here, another crime. This factor is irrelevant to the principal championed by the State in the *Mayfield* case, a principal that supports the grant of relief to the Petitioner.

In *Mayfield*, the State found that due process was violated when the punishment agreed-upon at the time of a parolee's plea to the violation before an

administrative law judge was subsequently doubled by the Parole Board. Therein, the State upheld the principal upon which the Petitioner's claim for relief rests. Under *Morrissey*, ruled the court, due process attaches "to the time assessment stage." 93 A.D. 3d at 108. "It is difficult" reasoned the State, "to conclude that the more complex step," the dispositional phase, "does not require due process while the simpler step," the finding of a violation – a step subsumed by the Petitioner's gift-card plea- "does." 93 A.D. 3d at 109 (citation omitted). Applying its aggregation statute in a way that papered-over the Petitioner's due process interest in his continued liberty as to the 1992 sentence, the State unreasonably applied Supreme Court precedent and, upon the lapse of the 2007 sentence, unconstitutionally imprisoned the Petitioner for some 8 more years. The lop-sidedness of this case, the plea to a sentence with a maximum of 3 years that yields imprisonment for 11, illustrates the constitutionally repugnant nature of New York's procedure.

     *B*. The Application of the Relevant State Law to the Petitioner's Case

     The Petitioner's constitutional claim was triggered by his plea to Attempted Criminal Possession of a Forged Instrument in the Second Degree, a non-violent E felony. *See,* N.Y.P.L. §§ 110/170.25. The plea, in this highly contested case, was induced by a promised term of imprisonment of 1½ to 3 years. The plea, however, triggered an added sentence of the full 8 years left undischarged on the Petitioner's prior conviction. By the terms of Penal Law Section 70.06, which made the

sentences consecutive on the basis of the Petitioner's prior felony offender status, and Sections 70.25[2-a] and 70.30(1)(b), which added the undischarged time of some 8 years to the three-year maximum of the 2007 indeterminate sentence, the Petitioner was ultimately held for an aggregated term of some 11 years. By removing all discretion from the second step of the revocation process, to wit, the dispositional phase, and by eliminating any process inclusive of the parolee in advance of the assessment of punishment for the parole violation, the instant application of the relevant State laws violates due process.

Executive Law 259(i) (3)(d) (iii) provides, in relevant part, that "when a presumptive releasee, parolee, conditional releasee or person on post-release supervision has been convicted of a new felony committed while under such supervision and a new indeterminate or determinate sentence has been imposed, the board's rules shall provide for a final declaration of delinquency. The inmate shall then be notified in writing that his release has been revoked on the basis of the new conviction and a copy of the commitment shall accompany said notification." Thus, in the manner in which the statute is applied, "a parolee convicted of committing a new felony and sentenced to an indeterminate term is not even entitled to a final revocation hearing by reason of a 1984 statutory amendment. Felons in the latter category are subject to revocation of parole by operation of law without any

hearing." *People ex rel. Harris v Sullivan*, 74 N.Y. 2d 305, 308 (1989).[1]

As set forth in the brief filed on behalf of the Petitioner in the companion case, at the time of the plea to the E felony, the Petitioner was adjudicated a second felony offender on the basis of his prior conviction. *See*, N.Y.P.L. § 70.06. The Petitioner's second felony status rendered mandatory the imposition of a consecutive sentence for the undischarged portion of his earlier term of imprisonment. *See*, N.Y.P.L. §§ 70.25 [2-a]. The further sentence was in excess of 8 years and so yielded an aggregate maximum term in excess of 11 years. Once the sentences were aggregated in this manner, and as the State acknowledged in denying the Petitioner's Article 78 motion, "the maximum expiration, conditional release and parole eligibility" were all calculated in accordance with that sentence. *WDNY Docket No. 1:12-cv-00133-MAT Document 8-3, page 189. See also*, *People v. Buss*, 11 N.Y.3d 553, 557 (2008) (holding that the "primary function" of the Penal Law Section 70.30 "is to allow for the ready calculation of parole eligibility").

---

[1] Prior to a 1984 amendment of the statute, it was widely accepted that State law provided, with regard to parole revocation, that, "the parolee is entitled to a final revocation hearing, with the right to counsel, because of the divers factors which may influence the parole decision in fixing the period, if any, to be served under the prior unexpired sentence." *Beattie v. New York State Board of Parole*, 39 N.Y.2d 445, 447 (1976), *citing, People ex rel. Donohoe v Montanye*, 35 N.Y.2d 221, 226 (1974) and, amongst other cases, *Morrissey v Brewer*, 408 U.S. 471, 488 (1972).

C.  Automatic Revocation of Parole Is Unconstitutional

"The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Black v. Romano*, 471 U.S. 606, 610 (1985), *quoting, Bearden v. Georgia*, 461 U.S. 660, 666, and n. 7 (1983).  This Court, summarizing the development of substantive due process in the area of parole revocation, has noted that in *Morrissey v. Brewer*, "the Supreme Court ruled that a parolee, *i.e.,* one already released from prison on parole, had certain due process rights that must be respected before his parole could be revoked. These included the right to written notice of claimed parole violations, disclosure of the evidence against him, and a hearing before a neutral body such as a traditional parole board at which he could be heard, present witnesses, and confront and cross-examine adverse witnesses. *Green v. McCall*, 822 F.2d 284 (2d Cir. 1987), *citing, Morrissey v. Brewer*, 408 U.S. 471 (1972).

The mandate for the grant of due process stems from the parolee's interest in continued freedom from incarceration. "The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows

reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. at 481-82. Accordingly, the Supreme Court has specified that, "Even though the revocation of parole is not a part of the criminal prosecution," the loss of liberty entailed "is a serious deprivation requiring that the parolee be accorded due process." *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973).

The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Doe v. Simon*, 221 F.3d 137, 140 (2d Cir. 2000), *quoting, Mathews v. Eldridge*, 424 U.S. 319, 333 (1979) (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Due process "is flexible and calls for such procedural protections as the particular situation demands.'" *Drayton v. McCall*, 584 F.2d 1208, 1218 (2d Cir. 1978), *quoting*, *Morrissey v. Brewer*, 408 U.S. at 481. "Specifically," in the context of parole revocation, this

means that "a parolee is entitled to two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole," admittedly, *not* an issue in this case, "and the other a somewhat more comprehensive hearing," the dispositional phase that the Petitioner was denied." 411 U.S. at 781-82. [2]

The fact of the new conviction, as the Petitioner acknowledged before the State courts, satisfies the first step of the *Morrissey v. Brewer* revocation decision by establishing the undisputed and conceded fact of a violation of parole. New York law is unconstitutional, however, because in place of a second step hearing, the dispositional phase described by the Supreme Court as the more comprehensive of the two, the hearing at which it is determined "whether the parolee should be recommitted either for his or society's benefit," *Inmates of the Neb. Penal & Corr. Complex,* 442 U.S. 1, 9 (1979), the State automatically sentences the defendant to an aggregate sentence, and then makes all future parole release decisions on the basis of that aggregate sentence.

As applied, Executive Law 259(i)(3)(d)(iii) removes all discretion as to that second decision and so, as evident in the case at bar, injects the element of

---

[2] Due process does not mandate a full trial prior to revocation. If the hearing is conducted before a judge, due process does not even mandate that the judge, prior to revocation, indicates that alternatives were considered. *Black v. Romano*, 471 U.S. 606, 607-08 (1985). If a state law invests discretion in a judge who was obligated to make independent findings and conclusions apart from any recommendation of parole or probation, a due process analysis "must presume that the state judge followed" that law and, "recognized his discretionary power to either revoke or continue probation." *Black v. Romano*, 471 U.S. 606, 613 (1985).

arbitrariness into the revocation process. The statute provides that after release is revoked on the basis of the new conviction, "the inmate's next appearance before the board shall be governed by the legal requirements of said new indeterminate or determinate sentence." *See, Executive Law* 259(i)(3)(d)(iii). The Petitioner has long argued that the statute, as written, is not per se unconstitutional. If the phrase "new sentence" referred to the indeterminate 2007 sentence pronounced in court, then the State procedures would have comported with due process if, at the expiration of the 2007 sentence, no later than at the point of the expiration of the three year maximum, the Petitioner had been afforded the assessment stage that was a constitutional predicate to the imposition of a term of imprisonment for the parole violation. The State, however, in applying this statute, considers the "new" sentence to be the aggregated sentence. See, *WDNY Docket No. 1:12-cv-00133-MAT Document 8-3, pages 192-93*. This application, the Petitioner has long argued, is unconstitutionally arbitrary.

The indisputable fact of the conviction, and the consequent relief of the burden as to the first step of the revocation decision, does not relieve the State of the burden of meaningful process as to the second step of the revocation decision, the dispositional decision., In depriving parolees of process prior to the assessment of further time, New York State denies all parolees *any* opportunity to establish their worthiness for continued parole upon the expiration of the newly imposed sentence

for the further crime committed.    This streamlining is unconstitutional.

The Supreme Court has emphasized that the protection of a liberty interest, "parallels the accepted due process analysis as to property" in that "some kind of hearing is required at some time before a person is finally deprived of his property interests." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), *citing, Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring). "The touchstone of due process is protection of the individual against arbitrary action of government." 418 U.S. at 558, *citing, Dent v. West Virginia*, 129 U.S. 114, 123 (1889)." Moreover, appeal does not cure the violation. On this appeal, the State merely concluded that the constitutionally offensive application of the law was followed in accordance with State precedent. To comport with due process, the requisite hearing "must be accorded *before* the effective decision." *Morrissey v. Brewer*, 408 U.S. at 476, n. 1, *citing, Armstrong v. Manzo*, 380 U.S. 545 (1965) (emphasis supplied).

As illustrated by the Petitioner's plight,  the automatic aggregation that results in the enhancement of the agreed upon sentence, on the basis of *any* felony conviction, even the lowest grade non-violent felony, is the very definition of arbitrary. The limited threat posed to society through the use of a forged credit card hardly seems to warrant the addition of a full 8 years to a maximum term of imprisonment. State and lower federal court decisions to the contrary are simply

wrong, and unreasonably so.

In sum, the automatic imposition of the full undischarged term without the second step, the dispositional phase decision, the more complex of the two decisions to be made, does not comport with the parameters of due process established by the Supreme Court.

D.   A Finding of Constitutional Violations is Compelled

By the terms of the governing statute, this Court is empowered to grant habeas corpus relief to a petitioner such as Mr. Santiago, one who adjudicated his federal claim in state court, where that adjudication, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See*, 28 USC §2254(d)(1). The Supreme Court has explained that a state decision is contrary to Federal law when it, "'applies a rule that contradicts the governing law set forth in or cases,' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a different result from our precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003), *quoting, Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). *See also, Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).

"Contrary to" means not simply applying the wrong rule, as in omitting the *Strickland* standard in evaluating a claim of ineffectiveness, but, rather, also means the misapplication of, the governing legal principle or principles set forth by the

Supreme Court at the time the state court renders its decision." *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004), *quoting, Williams v. Taylor*, 529 U.S. at 413. Under the "unreasonable application" clause, a district court may grant habeas relief, "if the state court identifies the correct governing principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Yarborough v. Alvarado,* 541 U.S. 652, 663 (2004), *quoting, Williams v. Taylor*, 529 U.S. at 413.

New York State's adjudication and rejection of both the Petitioner's due process claim, and his Sixth Amendment claim, were both contrary to and involved unreasonable applications of, clearly established Federal law, as determined by the Supreme Court.

In rejecting the instant claim, the State ruled, "We are unpersuaded by petitioner's contention that, absent any further parole revocation procedures with regard to his parole violation, it was improper to continue his incarceration past the expiration of his March 2007 sentence. Upon petitioner's conviction of the new felony while on parole, his parole release was properly revoked by operation of law without a hearing." A.4-5. The revocation of parole status by operation of law, and the imposition of an aggregated sentence thereafter, contradicts each of the relevant Supreme Court holdings in this area from *Morrissey v. Brewer,* 408 U.S. 471 (1971), to *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), *Greenholtz v. Inmates of the Neb.*

*Penal & Corr. Complex*, 442 U.S. 1 (1979), and *Black v. Romano*, 471 U.S. 606 (1985).

Rejecting the instant claim, the district court, in reliance upon the analysis in *Keyes v. Juul*, 270 F.Supp.2d 327, 329 (E.D.N.Y. 2003), concluded that because the Petitioner's revocation was based upon a conviction on new felony charges, the requirements of establishing probable cause and then an actual violation of parole have been satisfied by the conviction. But as the Petitioner has long argued, the fact of the conviction satisfies only the first decision under *Morrissey* and New York may not constitutionally abrogate the second by declaring that every parole violator must return to prison. In creating a liberty interest through the state parole system, the state has also created in parolee's a due process interest in their liberty. Though inherently conditional, that liberty may not be taken arbitrarily.

In this regard, the district court's reliance upon *Black v. Romano*, 471 U.S. 606 (1985), for the proposition that *Morrissey* does not require that the fact-finder in a revocation proceeding must, as a matter of due process, be granted discretion to continue parole, A.41, is simply wrong. In *Black v. Romano*, as previously noted, the state law gave the judge, after a hearing at which the counseled defendant was in attendance, "discretionary power to either revoke or continue probation." *Black v. Romano*, 471 U.S. 606, 613 (1985). In that case, though the judge, in revoking parole, had not explicitly stated that he had considered the alternatives, the Supreme

Court ruled that a due process analysis "must presume that the state judge followed" that law. 471 U.S. at 613. Thus, the issue in *Black v. Romano* was not the Supreme Court's grant of a license to be arbitrary but, rather, whether due process mandates that a judge recite some form of an incantation to pass the due process test. The Court in the *Black* case made clear that it does not.

More to the point, the Court in the *Black* case also seized the opportunity to articulate the *Morrissey* holding in clear and concise terms: "The decision to revoke Romano's probation satisfied the requirements of due process. In conformance with *Gagnon* and *Morrissey*, the State afforded respondent a final revocation hearing. The courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation. The memorandum prepared by the sentencing court and the transcript of the hearing provided the necessary written statement explaining the evidence relied upon and the reason for the decision to revoke probation. Romano does not dispute that he had a full opportunity to present mitigating factors to the sentencing judge and to propose alternatives to incarceration. The procedures required by the Due Process Clause of the Fourteenth Amendment were afforded in this case, even though the state judge did not explain on the record his consideration and rejection of alternatives to incarceration." *Black v. Romano*, 471 U.S. at 615-16 (citations omitted).

Simply stated, there are no safeguards anywhere evident on this record. The

Petitioner, after the fact and with a single piece of paper, was informed that his maximum allowable sentence had been near quadrupled. Moreover, all future parole determinations were based on this improperly aggregated sentence. Thus, the Petitioner was unconstitutionally held in custody after the lapse of the 2007 sentence. A comparison between the New York's automatic revocation and the process afforded to the parolee by the state of Missouri, as detailed in *Black v. Romano,* serves as a means to measure constitutional compliance and, further, establishes New York State's non-compliance.

As the Supreme Court detailed that procedure, "the judge," not the isolated and insulated group of parole board members in a proceeding that excluded the Petitioner, "who had sentenced Romano on the controlled substance charges held a probation revocation hearing. Several witnesses gave testimony indicating that Romano had run over a pedestrian in front of a tavern and then had driven away. Romano offered no explanation of his involvement in the accident. Instead, his counsel challenged the credibility of the witnesses, argued that the evidence did not justify a finding that Romano had violated his probation conditions, and requested the court to continue the defendant's probation." *Black v. Romano*, 471 U.S. at 609. Had New York obeyed such a procedure, there would be no due process claim before this Court.

The linking of the Petitioner's two cases pending reveals the inconsistency in

the State's arguments and the compelling need for relief to be afforded to the Petitioner, whether under an ineffectiveness analysis or a straight due process analysis. Answering the ineffective assistance claim, the State alleged that relief was not warranted because "neither counsel nor the court, were under any obligation to inform defendant that his parole would be revoked following his plea and sentence in the current case," because the revocation of parole was a collateral, rather than a direct, consequence of the plea. *Santiago v. LaClair*, A. 179-80, *citing, People v. Ford*, 86 N.Y. 2d 397 (1995). Rejecting the due process claim, the State appellate court, however, concluded, "Upon petitioner's conviction of the new felony while on parole, his parole release was properly revoked by operation of law without a hearing." A.4-5 (citations omitted). While the Petitioner's claims for relief under both ineffective assistance and due process analyses are not inconsistent, the State's findings in these two companion cases are inconsistent. A consequence that is automatic may not be deemed collateral.

Even if this Court accepts the collateral/direct dichotomy relied upon by the Southern District in dismissing the petition for relief filed in *Santiago v. LaClair,* one rejected by the Petitioner, the State's findings and documentation in this case reveal the automatic and, therefore, direct nature of the consequence that was the imposition of the full undischarged term as a penalty for parole violation and the sentence aggregation that immediately followed. To the extent the

dichotomy-analysis is relevant, "direct consequences" are "those that have a 'definite, immediate and largely automatic effect on the range of the defendant's punishment,' and designating other consequences as collateral." *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005).

Denying the Petitioner relief on his Article 78, the State judge wrote that where, as here, "an individual is subject to multiple indeterminate sentences of imprisonment, running consecutively, the respective minimum periods and maximum terms are added pursuant to Penal Law §70.30(1)(b) to yield a single, aggregate indeterminate sentence. An inmate serving such a single, aggregate indeterminate sentence, moreover, remains subject to all of the component sentences for the duration of the aggregate maximum term." *WDNY Docket No. 1:12-cv-00133-MAT Document 8-3, page 274.* Indeed, on the State Department of Corrections website, all relevant dates for the 1½-3 sentence, including the conditional release date of December 27, 2013, were calculated on the basis of the aggregated term.[3] The can be no better example of a "definite, immediate and largely automatic effect on the range of the defendant's punishment." 413 F.3d at 199

In advance of the filing of this brief, at the conclusion of the aggregated 11-year term, the Petitioner was released from custody. Accordingly, this Court is

---

[3] The Department of Corrections website is http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ2/WINQ120. The Petitioner's records may be accessed using his Inmate Number 07-A-1732.

urged to find that the Petitioner was unconstitutionally and illegally held in custody after the lapse of the 2007 sentence, and further urged to vacate the 2007 conviction both because the sentence aggregation unconstitutionally confined the Petitioner's after the lapse of the three-year maximum of the 2007 sentence  and because counsel was ineffective for failing to alert the Petitioner, in advance of the 2007 plea, of the manner in which the State law would aggregate his sentence.

### CONCLUSION
**FOR ALL OF THE FOREGOING REASONS, THIS COURT IS URGED TO FIND THAT THE PETITIONER'S CONTINUED INCARCERATION BY NEW YORK STATE AFTER THE LAPSE OF HIS 2007 SENTENCE WAS UNCONSTITUTIONAL.**

Respectfully Submitted,
/s/
_____
Sally Wasserman
Counsel to John Santiago

### *CERTIFICATE OF COMPLIANCE*

In compliance with Federal Rules of Appellate Procedure 32(a) (7) (i) and (a) (7) (C) (i), I, Sally Wasserman, certify that this brief was prepared using the Corel Word Perfect word-processing   system, and that, according to the word count of that word-processing system, this brief contains 7179 words, not counting the Table Of Contents and the Table of Authorities.

/s/
_____
Sally Wasserman
Counsel to the John Santiago

**APPENDIX**

## TABLE OF CONTENTS

**Page**

District Court Docket Entries ..................................... A-1

Answer in Response to Petition for Writ of *Habeas Corpus*, dated August 17, 2012
(Omitted herein)

Exhibits to Answer:
Memorandum and Order of the Appellate Division, Third Department in *Santiago v. Alexander*, dated January 27, 2011 ....................... A-4

Decision and Order of the Appellate Division, Third Department in *Santiago v. Alexander*, dated March 25, 2011 ........................................ A-6

Decision and Judgment of the Honorable S. Peter Feldstein in *Santiago v. Alexander* (N.Y. S. Sup. Ct., Franklin Co. Index No. 2008-1957), dated February 24, 2010 ................................................. A-7

Decision and Order of the Honorable Michael A. Telesca, dated January 22, 2013 ........................... A-20

Judgment, dated January 23, 2013 ............................ A-49

Notice of Appeal, dated February 11, 2013 ............... A-50

Decision and Order of the Honorable Michael A. Telesca, dated May 13, 2013 ................................. A-52

Amended Notice of Appeal, dated June 17, 2013 ...... A-58

A-1

APPEAL,HABEAS,CLOSED_2013,ProSe

## U.S. DISTRICT COURT
### U.S. District Court, Western District of New York (Buffalo)
### CIVIL DOCKET FOR CASE #: 1:12-cv-00133-MAT

Santiago v. Unger                                      Date Filed: 02/13/2012
Assigned to: Hon. Michael A. Telesca                   Date Terminated: 01/23/2013
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)   Jury Demand: None
                                                       Nature of Suit: 530 Habeas Corpus
                                                       (General)
                                                       Jurisdiction: Federal Question

**Petitioner**

**John Santiago**                    represented by   **John Santiago**
                                                      07A1732
                                                      WYOMING CORRECTIONAL
                                                      FACILITY
                                                      Box 501
                                                      Attica, NY 14011-0501
                                                      PRO SE

V.

**Respondent**

**David Unger**                      represented by   **Paul B. Lyons**
*Superintendent*                                      Office of New York State Attorney
                                                      General
                                                      120 Broadway
                                                      New York, NY 10271
                                                      212-416-8229
                                                      Fax: 212-416-8010
                                                      Email: paul.lyons@ag.ny.gov
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/13/2012 | 1 | PETITION for Writ of Habeas Corpus, filed by John Santiago.(DR) (Entered: 02/15/2012) |
| 02/13/2012 | 2 | MOTION to Proceed in forma pauperis by John Santiago.(DR) (Entered: 02/15/2012) |
| 05/10/2012 | 3 | ORDER granting 2 Motion for Leave to Proceed in forma pauperis. Respondent shall file an answer to the petition and memorandum of law by no later than June 18, 2012. Petitioner shall have thirty (30) days upon receipt of the answer to file a written response to the answer and memorandum of law. |

| | | |
|---|---|---|
| | | The Clerk of the Court shall serve a copy of the petition and this order, by certified mail, upon Superintendent of Wyoming Correctional Facility, Assistant Attorney General in Charge, and to the District Attorney of Bronx County, the District Attorney of Rockland County, and the New York State Division of Parole. Signed by Hon. John T. Curtin on 5/9/12. (DR) (Entered: 05/10/2012) |
| 06/14/2012 | 4 | First MOTION for Extension of Time to File Answer by David Unger.(Lyons, Paul) (Entered: 06/14/2012) |
| 06/20/2012 | 5 | TEXT ORDER granting 4 Motion for Extension of Time to Answer David Unger. Answer due 8/17/2012.. Signed by Hon. Leslie G. Foschio on 6/20/2012. (SDW) (Entered: 06/20/2012) |
| 06/22/2012 | 6 | DECLARATION in Opposition re 4 First MOTION for Extension of Time to File Answer filed by John Santiago. (DR) (Entered: 06/22/2012) |
| 08/17/2012 | 7 | MEMORANDUM IN OPPOSITION re 1 Petition for Writ of Habeas Corpus by David Unger. (Lyons, Paul) (Entered: 08/17/2012) |
| 08/17/2012 | 8 | *Answer in* RESPONSE to 1 Petition for Writ of Habeas Corpus by David Unger. (Attachments: # 1 Index of State Court Records, # 2 Exhibits A to I, # 3 Exhibits J to V)(Lyons, Paul) (Entered: 08/17/2012) |
| 08/29/2012 | 9 | MOTION for Extension of Time to File Response as to 8 Answer in Response to Habeas Petition by John Santiago.(DR) (Entered: 08/29/2012) |
| 09/04/2012 | 10 | TEXT ORDER granting 9 Motion for Extension of Time to File Response/Reply as to 8 Response to Habeas Petition. Petitioner's Responses due by 10/5/2012.SO ORDERED. Issued by Hon. Leslie G. Foschio on 9/4/2012. (SDW) (Entered: 09/04/2012) |
| 10/01/2012 | 11 | REPLY/RESPONSE to re 8 Response to Habeas Petition filed by John Santiago. (SG) (Entered: 10/02/2012) |
| 10/26/2012 | 12 | TEXT ORDER REASSIGNING CASE. Case reassigned to Hon. Michael A. Telesca for all further proceedings. Hon. Leslie G. Foschio no longer assigned to case. SO ORDERED. Issued by Hon. Leslie G. Foschio on 10/26/2012. (SDW) (Entered: 10/26/2012) |
| 11/28/2012 | 13 | ORDER that Respondent is to file supplemental papers with this Court as detailed in this Order within 30 days from the date of this Order and Petitioner shall have 30 days upon receipt of Respondent's supplemental papers to file a written response thereto. Signed by Hon. Michael A. Telesca on 11/28/12. (JMC) (Entered: 11/28/2012) |
| 12/05/2012 | 14 | MEMORANDUM IN OPPOSITION re 1 Petition for Writ of Habeas Corpus by David Unger. (Lyons, Paul) (Entered: 12/05/2012) |
| 12/05/2012 | 15 | DECLARATION filed by David Unger *in Support of Supplemental Memorandum Opposing Petition.* (Attachments: # 1 Exhibits W to CC)(Lyons, Paul) (Entered: 12/05/2012) |
| 01/02/2013 | 16 | REPLY/RESPONSE to re 14 Memorandum in Opposition filed by John |

| | | Santiago. (SG) (Entered: 01/03/2013) |
|---|---|---|
| 01/22/2013 | 17 | -CLERK TO FOLLOW UP- DECISION AND ORDER denying the petition for a writ of habeas corpus and dismissing the petition. (Clerk to close case.) Signed by Hon. Michael A. Telesca on 1/22/13. (JMC) (Entered: 01/22/2013) |
| 01/23/2013 | 18 | JUDGMENT in favor of David Unger against John Santiago. Signed by Michael J. Roemer, Clerk of Court on 1/23/13. (SG) (Entered: 01/23/2013) |
| 02/14/2013 | 19 | NOTICE OF APPEAL as to 18 Judgment by John Santiago. FEE STATUS: Fee Due, IFP Denied (SG) (Entered: 02/22/2013) |
| 02/22/2013 | 20 | CLERKS CERTIFICATE filed and electronically sent to Court of Appeals (Attachments: # 1 Index)(SG) (Entered: 02/22/2013) |
| 02/22/2013 | 21 | MOTION to Alter and/or Amend Judgment by John Santiago. (Attachments: # 1 Exhibits)(SG) (Entered: 02/22/2013) |
| 05/13/2013 | 22 | ORDER denying 21 Motion to Alter Judgment. Signed by Hon. Michael A. Telesca on 5/13/13. (JMC) (Entered: 05/13/2013) |
| 06/03/2013 | 23 | NOTICE OF APPEAL as to 22 Order on Motion to Alter Judgment by John Santiago. (Fee status, ifp denied, fee due) (DZ) (Entered: 06/03/2013) |
| 06/03/2013 | 24 | CLERKS CERTIFICATE filed and electronically sent to Court of Appeals (Attachments: # 1 index/docket sheet)(DZ) (Entered: 06/03/2013) |
| 06/20/2013 | 25 | AMENDED NOTICE OF APPEAL as to 18 Judgment by John Santiago. (SG) (Entered: 06/21/2013) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/29/2013 15:06:33 | | |
| PACER Login: | sw0833 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:12-cv-00133-MAT |
| Billable Pages: | 2 | Cost: | 0.20 |



[***1]   In the Matter of John Santiago, Appellant, v George B. Alexander, as Chair of the Division of Parole, Respondent.

**509166**

**SUPREME COURT OF NEW YORK, APPELLATE DIVISION, THIRD DEPARTMENT**

*80 A.D.3d 1105; 916 N.Y.S.2d 529; 2011 NY Slip Op 458; 2011 N.Y. App. Div. LEXIS 457*

**January 27, 2011, Decided**
**January 27, 2011, Entered**

**SUBSEQUENT HISTORY:** Leave to appeal denied by *Santiago v. Alexander, 17 N.Y.3d 705, 952 N.E.2d 1091, 2011 N.Y. LEXIS 1747, 929 N.Y.S.2d 96 (2011)*
Writ of habeas corpus denied, Dismissed by, Certificate of appealability denied *Santiago v. Unger, 2013 U.S. Dist. LEXIS 8256 (W.D.N.Y., Jan. 22, 2013)*

**PRIOR HISTORY:** *Matter of Santiago v. Alexander, 2010 N.Y. Misc. LEXIS 2408 (N.Y. Sup. Ct., Feb. 24, 2010)*

**HEADNOTES**

Parole--Eligibility--Conviction of New Crime while on Parole

**COUNSEL:** John Santiago, Auburn, appellant, Pro se.

Eric T. Schneiderman, Attorney General, Albany (Victor Paladino of counsel), for respondent.

**JUDGES:** Before: Cardona, P.J,. Malone Jr., Stein, McCarthy and Egan Jr., JJ. Malone Jr., Stein, McCarthy and Egan Jr., JJ., concur.

**OPINION BY:** Cardona

**OPINION**

[*1106]   [**529]   Cardona, P.J.

Appeal from a judgment of the Supreme Court (Feldstein, J.), entered March 1, 2010 in Franklin County, which dismissed petitioner's application, in a proceeding pursuant to *CPLR article 78*, to review a deter-

mination of the Board of Parole denying petitioner's request for parole release.

In 2000, petitioner was released to parole supervision while serving a prison term of 8 to 24 years pursuant to a 1992 conviction. In March 2007, while still on parole, petitioner pleaded guilty to attempted criminal possession of a forged instrument in the second degree. He was   [**530]   sentenced as a second felony offender to a prison term of 1 1/2 to 3 years, to run consecutively to the undischarged term of his prior sentence. Thereafter, in anticipation of his January 2008 parole eligibility date, petitioner appeared before the Board of Parole. His request for parole release was denied, with the direction that he be held for 24 months prior to his next Board appearance. Petitioner pursued an administrative appeal and, not receiving a response thereto,   [***2]   commenced this *CPLR article 78* proceeding. Supreme Court dismissed the petition ˙ and this appeal ensued.

˙  Petitioner has subsequently appeared before the Board and again was denied parole release. Nevertheless, Supreme Court determined, and we agree, that the issues presented by this proceeding fall within the exception to the mootness doctrine.

We are unpersuaded by petitioner's contention that, absent any further parole revocation procedures with regard to his parole violation, it was improper to continue his incarceration past the expiration of his March 2007 sentence. Upon petitioner's conviction of the new felony while on parole, his parole release was properly revoked by operation of law without a hearing (*see Peo-*

*ple ex rel. Harris v Sullivan, 74 NY2d 305, 308, 545 NE2d 1209, 546 NYS2d 821 [1989]; Matter of Meade v Boucaud, 67 AD3d 1263, 1264, 888 NYS2d 784 [2009]; People ex rel. Melendez v Bennett, 291 AD2d 590, 591, 738 NYS2d 112 [2002], lv denied 98 NY2d 602, 771 NE2d 836, 744 NYS2d 763 [2002]).* Furthermore, pursuant to the provisions of *Penal Law § 70.30 (1) (b)*, the minimum and maximum sentences of the two indeterminate consecutive sentences are, "with certain limitations not relevant here, ... added to form aggregate minimum and aggregate maximum wholes" (*People v Buss, 11 NY3d 553, 557, 900 NE2d 964, 872 NYS2d 413 [2008]*). Therefore, petitioner's eligibility for parole release and appearance before the Board are "governed by the legal requirements of said new indeterminate ... sentence" (*Executive Law § 259-i [3] [d] [iii]*). Inasmuch as petitioner's sentence was properly aggregated using this method, there was no error in continuing petitioner's incarceration past the expiration of his 2007 sentence and imposing a 24-month hold on his next appearance before the Board.

[*1107] We have reviewed petitioner's remaining contentions, including his equal protection argument with respect to *Executive Law § 259-i*, and find them to be without merit.

Malone Jr., Stein, McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed, without costs.
**[Prior Case History: 2010 NY Slip Op 30375(U).]**

Case 1:12-cv-00133-MAT   Document 8-3   Filed 08/17/12   Page 156 of 274

*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: March 25, 2011            Case #509166

---

In the Matter of JOHN SANTIAGO,
                        **Appellant,**                    **DECISION AND ORDER**
                                                            **ON MOTION**

  v

**GEORGE B. ALEXANDER, as Chair of**
**the Division of Parole,          Respondent.**

---

Motion for permission to appeal to the Court of Appeals.

Upon the papers filed in support of the motion, and no papers having been filed in opposition thereto, it is

ORDERED that the motion is denied, without costs.

MALONE JR., J.P., STEIN, McCARTHY and EGAN JR., JJ., concur.

ENTER:

Robert D. Mayberger
Clerk of the Court

STATE OF NEW YORK
SUPREME COURT                                    COUNTY OF FRANKLIN
                                                                              X
In the Matter of the Application of
**JOHN SANTIAGO, #07-A-1732,**
                                         Petitioner,

for Judgment Pursuant to Article 78          **DECISION AND JUDGMENT**
of the Civil Practice Law and Rules          **RJI #16-1-2008-0735.218**
                                             **INDEX # 2008-1957**
         -against-                           **ORI #NY016015J**

**GEORGE B. ALEXANDER, Chairman,**
NYS Division of Parole,
                                         Respondent.              MAR – 1 2010
                                                                              X

      This is a proceeding for judgment pursuant to Article 78 of the CPLR that was originated by the petition of John Santiago, verified on December 23, 2008, and filed in the Franklin County Clerk's office on December 29, 2008. Petitioner, who is now an inmate at the Auburn Correctional Facility, is challenging the October 31/November 1, 2007 determination denying him parole, but only to the extent it was directed that he be held for an additional 24 months with a scheduled re-appearance in November of 2009. In this regard petitioner seeks a Court order directing respondent to conduct " . . . a final revocation hearing at the conclusion of petitioner's intervening [2007] sentence, in accordance with [Executive Law §259-i(3)(d)(iii)] . . ."

      The Court issued an Order to Show Cause on January 20, 2009, and received and reviewed respondent's Notice of Motion to dismiss, supported by the Affirmation of Kelly L. Munkwitz, Esq., Assistant Attorney General, dated March 6, 2009. The Court also received and reviewed petitioner's opposing papers, filed in the Franklin County Clerk's office on March 24, 2009. By Decision and Order dated June 23, 2009, respondent's motion was denied and he was directed to serve answering papers. The Court next received and reviewed respondent's Answer, including Confidential Exhibits B and D,

verified on July 14, 2009, as well as petitioner's Reply thereto, dated July 28, 2009, and filed in the Franklin County Clerk's office on August 3, 2009.

By Letter Order dated November 4, 2009, the Court directed respondent to supplement his answering papers by specifically addressing the equal protection argument advanced by petitioner. The Court has since received and reviewed the Supplemental Affirmation of Kelly L. Munkwitz, Esq., Assistant Attorney General, dated November 25, 2009, and the accompanying Affirmation of Elliott A. McIntosh, Esq., Assistant Counsel, New York State Division of Parole, also dated November 25, 2009. The Court has also received and reviewed petitioner's Reply thereto, filed in the Franklin County Clerk's office on December 22, 2009.

On March 18, 1992, petitioner was sentenced in Supreme Court, Bronx County, to a controlling indeterminate sentence of 8 to 24 years upon his convictions of the crimes of Manslaughter 1°, Criminal Possession of a Weapon 2° and Assault 2°. He was released from DOCS custody to parole supervision on September 6, 2000, but arrested on July 8, 2006, in connection with new criminal charges. On March 22, 2007, petitioner was sentenced in Rockland County Court, as a second felony offender, to an indeterminate sentence of 1 ½ to 3 years upon his conviction of the crime of Attempted Criminal Possession of a Forged Instrument 2°. There is nothing in the record to suggest that petitioner's parole was revoked following a final parole revocation hearing. Rather, it appears that petitioner's parole was revoked by operation of law as a result of his March 22, 2007, conviction and sentencing for a felony committed while at liberty under parole supervision. *See* Executive Law §259-i(3)(d)(iii).

Petitioner was received back into DOCS custody on March 29, 2007, certified as entitled to 264 days of jail time credit. At that time DOCS officials determined petitioner still owed 8 years, 2 months and 20 days against the undischarged maximum term of the

1992 indeterminate sentence. That undischarged term was aggregated with the maximum term of petitioner's 2007 indeterminate sentence pursuant to Penal Law §70.30(1)(b). *See People ex rel Gill v. Greene*, 12 NY3d 1. Accordingly, the maximum expiration, conditional release and parole eligibility dates with respect to petitioner's multiple sentences were calculated as September 24, 2017, December 27, 2015, and January 4, 2008, respectively.

On October 31, 2007, petitioner appeared before a three-member Parole Board in anticipation of his January 4, 2008 parole eligibility date. At the conclusion of the October 31, 2007 hearing parole was denied and it was directed that petitioner be held for an additional 24 months with his next Parole Board appearance scheduled for November 2009. The parole denial determination reads as follows:

> "PAROLE IS DENIED. YOU CURRENTLY SERVE A 1 ½ TO 3 YEAR TERM FOR THE ATTEMPTED CPFI 2ND. YOU USED A FRAUDULENT GIFT CARD TO PURCHASE ITEMS AT VARIOUS RETAIL STORES. AT THE TIME OF THE OFFENSE YOU WERE ON PAROLE FROM A PRIOR CONVICTION FOR MANSLAUGHTER IN THE 1ST DEGREE. YOU HAVE DEMONSTRATED A NEGATIVE RESPONSE TO PAST CORRECTIONAL INFLUENCES AS THE PANEL NOTES THAT YOUR CRIMINAL HISTORY BEGAN WHEN YOU WERE A JUVENILE.
>
> THEREFORE, WHILE THE PANEL NOTES THAT YOU HAVE RECEIVED AN EARNED ELIGIBILITY CERTIFICATE THE PANEL CONCLUDES THAT IF YOU ARE RELEASED AT THIS TIME THERE EXISTS A REASONABLE PROBABILITY THAT YOU WILL NOT LIVE AND REMAIN AT LIBERTY WITHOUT FURTHER VIOLATIONS OF THE LAW. ALL FACTORS CONSIDERED INCLUDING YOUR VIOLATION OF PAROLE YOUR RELEASE WOULD BE INCOMPATIBLE WITH THE WELFARE OF THE COMMUNITY."

Petitioner's administrative appeal was received by the Division of Parole Appeals Unit on March 31, 2008. The Appeals Unit, however, failed to issue its findings and recommendation within the time frame specified in 9 NYCRR §8006.4(c). This proceeding ensued.

In his administrative appeal petitioner did not call into question the denial of parole. Rather, petitioner cited his alleged satisfactory adjustment to parole supervision from September 6, 2000 when he was released, until his July 8, 2006 arrest, as well as the alleged "mitigating" circumstances surrounding such arrest, and sought modification of the 24-month hold.

Petitioner's application for a discretionary reduction in the 24-month hold, as advanced on administrative appeal, is not repeated in this proceeding. Instead, petitioner's application for relief herein ultimately appears to be premised upon the assertion that his aggregate maximum term of imprisonment can be broken down into discrete segments corresponding to the maximum term of each underlying, consecutive indeterminate sentence. In this regard petitioner asserts that he would not commence serving the 8 years, 2 months and 20 days still owing against the 24-year maximum term of his 1992 indeterminate sentence until he first completed serving the 3-year maximum term of his consecutive, 2007 indeterminate sentence . Assuming the viability of this foundation argument, petitioner goes on to assert, in effect, that although his October 31, 2007 Parole Board appearance was properly scheduled to coincide with the expiration of the 1½-year minimum period of incarceration associated with his 2007 indeterminate sentence, his next scheduled appearance following the 24-month hold would not occur until November of 2009, approximately ". . . 6 months over the legal requirements of the new [2007] sentence and 6 months into the un-discharged term [of the 1992 sentence]." According to the petitioner, the respondent would not have statutory authority to consider him for discretionary parole release in November of 2009 ". . . because the fact of the matter is that the petitioner herein would have completed the <u>legal requirements of the new [2007] sentence in accordance with [Executive Law §] 259-[i](3)(d)(iii) and would be detained on the sole premises of a parole violation.</u>" (Emphasis in original).

Petitioner goes on to argue that when he completes service of the 2007 indeterminate sentence- presumably, according to his reasoning, on July 4, 2009 - his then continuing detention in DOCS custody would be based solely on the underlying parole violation with his custodial status subject to review at that time under the provisions of Executive Law §259-i(3)(f)(x).

Petitioner's request for relief in this proceeding is premised not only upon the statutory arguments, outlined above, but also upon an equal protection claim that parolees convicted/sentenced in other jurisdictions are entitled to final revocation hearings/custodial dispositions upon the expiration of their intervening, out-of-state sentences pursuant to Executive Law §259-i(3)(f)(x) whereas parole violators, like himself, convicted/sentenced in New York State only receive ongoing discretionary parole release consideration pursuant to the provisions of Executive Law §§259-i(3)(d)(iii) and 259-i(2).

In the Supplemental Affirmation of Kelly L. Munkwitz, Esq., Assistant Attorney General, dated November 25, 2009, it was reported that on September 15, 2009, petitioner reappeared before a Parole Board for discretionary release consideration but that the Board again denied petitioner parole and directed that he be held for an additional 24 months with the next appearance date in September of 2011. Citing, *inter alia, LaSalle v. New York State Division of Parole,* 52 AD3d 1071, respondent asserts that the reappearance and new parole denial determination has rendered this proceeding moot. The Court disagrees.

The appropriate relief available to an inmate who successfully challenges a discretionary parole denial determination is a court order directing a *de novo* hearing. *See Lichtel v. Travis,* 287 AD2d 837. Therefore, in the absence of an exception to the mootness doctrine, when an inmate with a pending challenge to a discretionary parole

denial determination receives a new parole hearing and is again denied discretionary release the pending challenge is rendered moot since inmate has, in effect, already received the appropriate relief in the form of the new hearing. In the case at bar, however, the petitioner does not challenge the October/November 2007 discretionary parole denial determination. Rather, he asserts that upon completion of the maximum term of the 2007 indeterminate sentence (presumably on or about July 4, 2009) his then continuing detention in DOCS custody could no longer be based upon the 24-month hold imposed in connection with the October/November 2007 discretionary parole denial determination but, instead, must be based upon the revocation of his parole and imposition of a delinquent time assessment following a final parole revocation hearing. This proceeding, therefore, can in no sense be considered moot based upon petitioner's September, 2009 Parole Board reappearance and the ensuing denial of discretionary release with an additional 24-month hold.

Turning to the merits, or lack thereof, of the arguments advanced by petitioner in this proceeding, the Court finds that his statutory/regulatory claim of entitlement to formal parole revocation proceedings upon the expiration of the maximum term of his 2007 indeterminate sentence is based upon a fundamentally flawed premise and is therefore rejected. Where, as here, an individual is subject to multiple indeterminate sentences of imprisonment, running consecutively, the respective minimum periods and maximum terms are added pursuant to Penal Law §70.30(1)(b) to yield a single, aggregate indeterminate sentence. An inmate serving such a single, aggregate indeterminate sentence, moreover, remains subject to all of the component sentences for the duration of the aggregate maximum term of imprisonment. *See People v. Buss*, 11 NY3d 553 *and People v. Delk*, 59 AD3d 733. This Court therefore rejects petitioner's assertion that in July of 2009 he completed serving the 3-year maximum term of his

2007 indeterminate sentence and commenced serving the 8 years, 2 months and 20 days remaining against the undischarged maximum term of his 1992 indeterminate sentence.

Upon imposition of petitioner's 2007 indeterminate sentence his parole was revoked by operation of law without the necessity of a parole revocation hearing. *See* Executive Law §259-i(3)(d)(iii), *Meade v. Boucaud*, 67 AD3d 1263 and *Tineo v. New York State Division of Parole*, 14 AD3d 949. Petitioner's next appearance before a Parole Board for discretionary release consideration was governed by the legal requirements of the newly imposed 2007 indeterminate sentence. *See* Executive Law §259-i(3)(d)(iii). Thus petitioner's parole eligibility date was properly calculated as January 4, 2008 and, as acknowledged by petitioner, he properly appeared before a Parole Board in the anticipation of that parole eligibility date in October of 2007. After denying petitioner discretionary release the 2007 Parole Board acted within the limits of its statutory authority in specifying that petitioner would not be reconsidered for parole release for a period of 24 months. *See* Executive Law §259-i(2)(a)(i). Petitioner was not entitled to discretionary parole release consideration prior to the expiration of that 24-month period and, as noted previously, he was not entitled to a parole revocation hearing.

Having determined that petitioner is not entitled to the relief he seeks under the applicable statutory/regulatory scheme, it remains to be determined whether or not the application of that scheme to petitioner's situation constituted an equal protection violation. In this regard the Court initially observes that petitioner's challenge must be examined under the rational basis test since no suspect classification or fundamental right is implicated. "As traditionally formulated, this test requires that a governmental classification be based on some conceivable and valid State interest . . . Thus, the United States Supreme Court has indicated, '[a] statutory discrimination will not be set aside

if any state of facts reasonably may be conceived to justify it' (*McGowan v. Maryland*, 366 US 420, 426)." *People v. Drayton*, 39 NY2d 580, 585 (other citations omitted).

Executive Law §259-i(3)(d)(iii) provides, in relevant part, that "when a . . . parolee . . . has been convicted of a new felony committed while under such [parole] supervision and a new indeterminate . . . sentence has been imposed, the board's rules shall provide for a final declaration of delinquency. The inmate shall then be notified in writing that his release has been revoked and the basis of the new conviction . . . The inmate's next appearance before the [parole] board shall be governed by the legal requirements of said new indeterminate . . . sentence . . ." The New York Court of Appeals, however, has determined that the above-quoted parole revocation hearing exception does not apply to a New York parolee convicted of a felony and sentenced in another state. *People ex rel Harris v. Sullivan*, 74 NY2d 305. The Court of Appeals in *Harris* noted that where a parolee is convicted of a new felony and sentenced in New York " . . . a final parole revocation hearing would be a vain gesture because no fact finding by the Board of Parole would be necessary to ascertain that the parolee has in fact violated the conditions of his parole. The court of conviction and sentence would have already undisputably established that reality. Additionally, when a parolee is convicted of a new New York felony in a new indeterminate sentence is imposed, a final parole revocation hearing is not needed to fix the parolee's reappearance before the Board because the violator's reappearance date is automatically fixed by law at the time of sentencing for the new felony." *Id* at 310 (citations omitted). The *Harris* court, however, contrasted that scenario with the scenario where a New York parolee, convicted of a new felony and sentenced in another state, serves his out-of-state sentence and is returned to New York to continue serving his/her underlying New York sentence. The Court of Appeals noted that in such a situation the date for the parole violator's reappearance before the Parole

Board is not fixed by law and lies entirely in the discretion of the Board. "Thus," according to the *Harris* court, "while a final revocation hearing is redundant under New York's distinctive sentencing scheme for purposes of setting a reappearance date after a new New York 'indeterminate' sentence is imposed, there is no procedural surplusage where . . . [the parole violator] was sentenced to an out-of-State term which has no such consequence." *Id* at 310. Accordingly, this Court finds no equal protection violation in the statutory scheme whereby a New York parolee convicted of a new felony and sentenced in this state has his/her parole revoked by operation of law without a final parole revocation hearing whereas a New York parolee convicted of a new felony and sentenced in the sister state is afforded such a hearing.

To the extent anything in petitioner's papers may be construed as challenging the distinctions associated with the re-release to parole supervision procedures applicable after the revocation of parole by operation of law, as opposed to such procedures applicable after the revocation of parole following a final hearing, this Court ultimately concludes that such distinctions are not significant in that neither set of procedures affords any clear advantage over the other.

When parole is revoked by operation of law and the violator's next appearance before the Board is governed by the legal requirements of his/her new New York sentence, a parole release interview must be conducted by a panel of at least two Parole Board members in anticipation of the parole eligibility date. *See* Executive Law §259-i(2)(a)(i) and 9 NYCRR §8002.2. At that interview/hearing the Board may, of course, direct the violator's re-release to parole supervision. If, however, discretionary parole release is not granted the Board must specify a date for reconsideration within 24 months and the process repeats itself. *See* Executive Law §259-i(2)(a)(i) and 9 NYCRR §8002.3(d). The discretionary parole denial determination is deemed a judicial function

and is not reviewable if done in accordance with law (Executive Law §259-i(5)) unless it is demonstrated that the determination was affected by irrationality bordering on impropriety. *See Silmon v. Travis*, 95 NY2d 470.

When a parolee is convicted and sentenced in connection with a new, out-of-state felony and the parole revocation hearing exception of Executive Law §259-i(3)(d)(iii) is therefore not applicable, the revocation of parole must await a final hearing conducted after the accused violator completes the incarceration phase of his/her out-of-state sentence. *See People ex rel Harris v. Sullivan*, 74 NY2d 305 and *Barksdale v. Dennison*, 40 AD3d 1233. Presuming the parole violation charges are sustained, the administrative law judge presiding at the final hearing has the option of directing/recommending that the violator be restored to parole supervision (9 NYCRR §8005.20(c)(4)), that the violator be restored to the Willard Drug Treatment Campus Program (if the consent of the violator and the Division is obtained) (9 NYCRR §8005.20(c)(1)), that the violator be placed in an alternative to re-incarceration program (9 NYCRR §8005.20(g)), or that the violator be returned to DOCS custody for a specified period of time up to the maximum expiration of his/her underlying New York sentence (9 NYCRR §8005.20(c)). If the parole violator is returned to DOCS custody for a period of time less than the maximum expiration of his/her sentence, re-release consideration upon the expiration of the time assessment is controlled by the provisions of 9 NYCRR §8002.6. Upon completion of the delinquent time assessment "[a]ll parole violators . . . will be re-released to parole supervision," without Board action, unless specific circumstances set forth in 9 NYCRR §8002.6(c)(1) are identified. If such circumstances are identified, one or more Board members, acting without a personal interview of the violator, may require that such an interview be conducted before a panel of two or more Board members. "When, after such interview, the Board again considers parole violator for a re-release,

there shall be no presumption, express or implied, favoring the violator's re-release." 9 NYCRR §8002.6(d)(2)(ii)(b).

Whether a parole violator appears before the Board after completing the legal requirements of his/her new New York sentence (Executive Law §259-i(3)(d)(iii)) or his/her New York parole is revoked following a final hearing conducted after serving the incarceration phase of an out-of-state sentence, re-release to parole supervision at that time, subject to conditions, is a potential outcome. Continuing incarceration or re-incarceration in DOCS custody is, of course, an alternative potential outcome. To the extent petitioner suggests that re-incarceration in DOCS custody following a final parole revocation hearing is implemented by way of a fixed delinquent time assessment with re-release to parole supervision automatic upon the expiration of such time assessment, whereas continuing incarceration following the denial of discretionary parole release is implemented by way of an ongoing hold order which carries with it only the promise of further reconsideration upon the expiration of such hold order, the Court first notes that re-release to parole supervision upon the expiration of a delinquent time assessment is not automatic. Such expiration merely determines the date upon which the parole violator will be eligible for re-release. *See* 9 NYCRR §8002.6(a) and *Poladian v. New York State Division of Parole*, 5 AD3d 824.

Even if the parole violator re-release provisions set forth in 9 NYCRR §8002.6, particularly the provision set forth in 9 NYCRR §8002.6(c)(1) that "[a]ll parole violators . . . will be re-released to parole supervision," without Board action, unless specific circumstances set forth in the regulation are identified, might be construed as offering an easier path to re-release, one must bear in mind that a delinquent time assessment imposed upon the revocation of parole at a final parole revocation hearing can be for a period of time up to the maximum expiration of the parole violator's underlying

sentence. Thus, an individual whose parole is revoked following a final parole revocation hearing its subject to reincarceration in DOCS custody for the remainder of his/her underlying sentence without any provision for reconsideration. Where an individual is denied discretionary parole release, on the other hand, reconsideration is statutorily mandated at least every 24 months.

It is interesting to note that the petitioner in *Barksdale v. Dennison*, 40 AD3d 1233, whose New York parole was revoked with a delinquent time assessment directing that he be held to his maximum expiration date following a final parole revocation hearing conducted after completion of an out-of-state sentence for a crime committed while under New York parole supervision, unsuccessfully argued that he was subject to the parole revocation hearing exception set forth in Executive Law §259-i(3)(d)(iii). Thus the *Barksdale* petitioner, unlike the petitioner in this proceeding, found it more advantageous to have his parole revoked by operation of law, thereby requiring his periodic appearance before the Board for re-release consideration, rather than to have his parole revoked following a final hearing with a delinquent time assessment directing that he be held to the maximum expiration of his underlying sentence with no opportunity for discretionary parole re-release consideration.

An equal protection challenge, to be successful, must at a minimum reflect disparate treatment between categories of individuals such that one group is receiving some advantage or benefit denied to the other; petitioner here can point to no such advantage or benefit inuring to the other class of individuals (those with out-of-state convictions). Advantages, and detriments (or risks) flow in both directions, as *Barksdale* makes clear, and under these circumstances, the underlying premise of an equal protection challenge simply does not exist.

Based upon all of the above, it is, therefore, the decision of the Court and it is hereby

**ADJUDGED**, that the petition is dismissed.

Dated:    February 24, 2010, at
          Indian Lake, New York.

                                               S. Peter Feldstein
                                 Acting Supreme Court Justice

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN SANTIAGO,

                       Petitioner,

        -vs-

DAVID UNGER,
SUPERINTENDENT

               Respondent.

**DECISION AND ORDER**
**No. 12-CV-00133MAT**

_____

## I.  Introduction

*Pro se* Petitioner John Santiago ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of certain administrative decisions made by the New York State Division of Parole with respect to the revocation of his parole.

## II.  Factual Background and Procedural History

### A.  Petitioner's State Court Convictions and Sentencing

On March 18, 1992, Petitioner was sentenced in Bronx County Supreme Court to an aggregate indeterminate sentence of 8 to 24 years upon his convictions for first-degree manslaughter, second-degree criminal possession of a weapon, and second-degree assault. See Pet., Attach.[1] at p 1; Resp't Ex. A at p 14;[2] Resp't

---

[1] In between pages 5 and 6 of the pre-printed form habeas petition, Petitioner inserts a seven page typed document entitled "Statement of Facts, Procedural History & Grounds One and Two." This document is separately paginated with the numbers 1-7. To avoid confusing the page numbers of the form habeas petition with those of the attached document, the Court hereinafter refers to the document entitled "Statement of Facts, Procedural History & Grounds One and Two"

Ex. E at Aff. ¶ 5.  He was released from New York State Department

of Correctional Services ("DOCS")[3] custody to parole supervision on

September 6, 2000, having served over eight years, the minimum term

of his indeterminate sentence.  See Resp't Ex. A at p 14.

On July 8, 2006, while still on parole, Petitioner was

arrested in connection with new criminal charges.  See Resp't Ex. A

at p 14; Resp't Ex. E at Ex. A.  In February 2007, he pleaded

guilty in Rockland County Court to second-degree attempted criminal

possession of a forged instrument, a felony, and on March 22, 2007,

he was sentenced, as a second felony offender, to an indeterminate

term of 1 ½ to 3 years imprisonment.  See Pet., Attach. at 1;

Resp't Ex. A at p 14; Resp't Ex. E at Aff. ¶¶ 3-4.  The Rockland

County Court directed that Petitioner's 2007 sentence be served

"consecutive to any undischarged determinate or indeterminate

sentence."  See Resp't Ex. A at p 14; Resp't Ex. E at Ex. H

(Sentencing Mins. at p 4).  Petitioner's parole was automatically

revoked by operation of law as a result of his 2007 conviction.

See Resp't Ex. E at Aff. ¶ 5; see also New York Executive Law

("Executive Law") § 259-i(3)(d)(iii).

---

as the "attachment" to the habeas petition.

[2]

    The Court refers to the CM/ECF pagination for this Exhibit, as it is
comprised of numerous numbered and unnumbered documents.

[3]

    DOCS and the New York State Division of Parole have since been merged to
form the Department of Corrections and Community Services.

Petitioner was received back into DOCS custody on March 29, 2007, and was certified as entitled to 264 days of jail time credit. See Pet., Attach. at 1; Resp't Ex. E at Ex. A. At the time Petitioner was received back into custody, DOCS determined that Petitioner still owed 8 years, 2 months, and 20 days against the undischarged maximum term of his 1992 indeterminate sentence. That undischarged term was aggregated with the maximum term of Petitioner's 2007 indeterminate sentence pursuant to Penal Law § 70.30(1)(b). See Resp't Ex. A at p 14. Accordingly, on or about April 9, 2007, DOCS calculated Petitioner's parole eligibility, conditional release, and maximum expiration dated with respect to his multiple sentences as January 4, 2008, December 27, 2013, and September 24, 2017, respectively. See Resp't Ex. A at p 14 and attached Ex. B (DOCS Legal Date Computations). On June 1, 2007, the Division of Parole issued a Notice of Final Declaration of Delinquency stating that Petitioner had been found delinquent on his conditions of parole as of July 8, 2006 (in connection with his arrest and conviction for a felony while on parole) and that his maximum expiration date had been extended, pursuant to Executive Law § 259-i(3)(d)(iii), based on the undischarged indeterminate sentence from his prior conviction. See Resp't Ex. A at attached Ex. J (Notice of Final Declaration of Delinquency by Board of Parole).

On October 31, 2007, Petitioner appeared before the Parole Board in anticipation of his January 4, 2008 parole eligibility date. At the conclusion of the hearing, parole was denied and Petitioner was directed to be held for an additional 24 months, with his next Parole Board appearance scheduled for November 2009. See Pet., Attach. at 1; Resp't Ex. A at p 14-15 and attached Exs. C (Parole Board decision), K (transcript of 10/31/07 parole board hearing).

Petitioner then filed an administrative appeal with the Division of Parole Appeals Unit (hereinafter "Appeals Unit"). See Resp't Ex. A at p 15 and attached Ex. D (Letter from Appeals Unit); Resp't Ex. E at Ex. G. In a letter to Petitioner dated November 13, 2007, the Appeals Unit acknowledged that it had received Petitioner's notice of appeal on that date and that the latest date for submitting documentation for perfecting his appeal was March 13, 2008. See Resp't Ex. A at Ex. D (Letter from Appeals Unit). On appeal,[4] Petitioner did not challenge "the parole denial itself," but rather sought modification of the "excessive" 24-month hold imposed by the Parole Board. See Resp't Ex. E at Ex. G, ¶ 1. The Appeals Unit failed to issue a determination on Petitioner's appeal. See Pet., Attach. at 1-2; Resp't Ex. A at p 15 and attached Ex. F.

---

[4] The cover page of Petitioner's appeal is date-stamped by the Appeals Unit, indicating that it was "[r]eceived March 13, 2008." See Resp't Ex. E at Ex. D (cover page).

-4-

### B.    The Article 78 Proceeding

Petitioner subsequently filed in Franklin County Supreme Court a *pro se* petition dated December 23, 2008, pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"), challenging "the decision by the division of parole at [his] parole eligibility hearing on October 31, 2007 which denied parole[] and scheduled a re-appearance parole eligibility date for Nov. 2009." See Resp't Ex. A at p 9, ¶ 3.

In the Article 78 petition, Petitioner argued that the approximately 8-year undischarged maximum term from his 1992 indeterminate sentence was entirely separate from his 2007 sentence of 1 ½ to 3 years, such that he would "not commence the un-discharged [8-year] term [from the 1992 sentence] until he complete[d] the 3 year maximum on the new [2007] sentence." See Resp't Ex. A at p 19-20.  Petitioner argued that, although the Parole Board properly calculated his January 4, 2008 parole eligibility date based on the 1 ½ year minimum term under his 2007 sentence, the Board improperly scheduled his next Parole Board hearing for November of 2009, even though that was approximately six months after his 2007 sentence had already expired on July 4, 2009.  See Resp't Ex. A at p 20.  Petitioner argued further that when he completed the maximum term of his 2007 sentence on July 4, 2009, the Division of Parole should hold a final revocation hearing

A-25

under Executive Law § 259-i(3)(f)(x) with respect to the 8-year undischarged term of his 1992 sentence, at which hearing he would be given a "delinquent time assessment." See Resp't Ex. A at p 20-21.

Petitioner also claimed that his equal protection rights were violated because of the different parole revocation procedures afforded a parolee convicted of a new felony, depending on whether the new conviction was in New York or in another state. See Resp't Ex. A at p 21-25.

Respondent, the Division of Parole, moved to dismiss the petition on the ground that Petitioner had failed to exhaust his administrative remedies. See Resp't Ex. B. On June 23, 2009, the Franklin County Supreme Court denied Respondent's motion, finding that the issues raised in Petitioner's Article 78 proceeding "were not cognizable in the context of an administrative appeal from a parole denial determination." Resp't Ex. D. The Division of Parole then filed its answer to the petition, and Petitioner filed a Reply. See Resp't Exs. E, F. On November 4, 2009, the county court directed the Division of Parole to address Petitioner's equal protection claim. See Resp't Ex. G. The Division of Parole filed an affirmation in response, and also asserted that all of Petitioner's claims were moot in light of Petitioner's second

appearance before the Parole Board in 2009.[5]   By Order dated
February 24, 2010, the Franklin County Supreme Court dismissed the
Article 78 proceeding.   See Resp't Ex. J.   Petitioner moved for
reargument, which was denied on July 22, 2010.   See Resp't
Exs. K, M.

C.   Appeal of the Article 78 Petition

Petitioner filed a *pro se* appeal with the Appellate Division,
Third Department, asserting the same two claims that he raised in
his Article 78 petition.   See Resp't Ex. N.   On January 27, 2011,
the Appellate Division unanimously affirmed the judgment dismissing
Petitioner's Article 78 proceeding.   See Matter of Santiago v.
Alexander, 80 A.D.3d 1105 (3d Dep't 2011) (Resp't Ex. Q).
Petitioner applied to the Appellate Division for permission to
appeal to the Court of Appeals (Resp't Ex. R), and Petitioner's
motion was denied on March 25, 2011 (Resp't Ex. S).   Petitioner
then applied directly to the Court of Appeals for leave to appeal,
which was denied on June 28, 2011.   See Santiago, 17 N.Y.3d 705
(2011) (Resp't Ex. V).

D.   The Federal Habeas Corpus Petition

On January 10, 2012, Petitioner filed the instant habeas
petition, wherein he seeks relief on what he has termed a

---

[5]

While Petitioner's Article 78 proceeding was pending, Petitioner reappeared
before the Parole Board on September 15, 2009, and again parole was denied and
Petitioner was ordered held for an additional 24 months, with Petitioner's next
parole board appearance scheduled for September 2011.   See Resp't Ex. H at Aff.
¶¶ 6-7.

"constitutional and statutory due process violation" and an "equal protection violation" related to the revocation of his parole. See Pet., Grounds One-Two (Dkt. No. 1). As Petitioner has pled these claims in the instant proceeding, they appear to be the same two claims upon which he sought relief in his Article 78 petition. Respondent filed an Answer and Memorandum in Opposition to the habeas petition on August 17, 2012 (Dkt. Nos. 7, 8), and Petitioner filed a Reply thereto on October 1, 2012 (Dkt. No. 11). At the request of the Court, Respondent submitted supplemental papers addressing the issue of timeliness (Dkt. Nos. 13-15), and Petitioner submitted a supplemental Reply (Dkt. No. 16).

For the reasons stated below, habeas corpus relief is denied and the petition is dismissed.

**III. Venue**

By Order dated May 10, 2012, this Court (John T. Curtin, D.J.) instructed Respondent, *inter alia*, to "address whether the Western District of New York is an appropriate and/or most convenient forum for this proceeding." See Order dated 05/10/12 (Dkt. No. 3) at 2-3. Respondent submits that venue is appropriate for the instant proceeding in the Western District, but that venue is also appropriate in the Northern District. See Resp't Mem. of Law at p 12-13.

28 U.S.C. § 2241(d) provides that:

Where an application for a writ of habeas corpus is made by a person in custody

A-28

under the judgment and sentence of a
State court of a State which contains two
or more Federal judicial districts, the
application may be filed in the district
court for the district wherein such
person is in custody or in the district
court for the district within which the
State court was held which convicted and
sentenced him and each of such district
courts shall have concurrent jurisdiction
to entertain the application. The
district court for the district wherein
such an application is filed in the
exercise of its discretion and in
furtherance of justice may transfer the
application to the other district court
for hearing and determination.

28 U.S.C. § 2241(d).

Because Petitioner was in custody at the Wyoming Correctional

Facility, which is located in Wyoming County, at the time he filed

his habeas petition, venue is appropriate in the Western District

of New York. See 28 U.S.C. § 2241(d); 28 U.S.C. § 112(d). To the

extent petitioner seeks to challenge the outcome of the parole

proceedings that took place at the Franklin Correctional Facility,

which is located in Franklin County, venue would also be proper in

the Northern District of New York. See 28 U.S.C. § 112(a); Brooks

v. Strack, No. 98-CV-6528 (JG), 1999 U.S. Dist. LEXIS 13199, 1999

WL 672949, at *4-5 (E.D.N.Y. Aug. 25, 1999) (where habeas petition

challenged parole hearing procedures, venue was proper where parole

hearing took place and where parole decision was made); see also

Robinson v. Atkinson, No. 03 Civ. 5176, 2004 WL 1798129, at *4-5

(S.D.N.Y. Aug. 5, 2004).

Although venue is appropriate in both this District and the Northern District, the Court sees no need to transfer the petition to the Northern District.   As Respondent points out, the convenience of witnesses is not an issue in this case, nor do the parties dispute that Petitioner's claims were adjudicated on the merits in the state court.   See Resp't Mem. of Law at 13. Although, the parties dispute the timeliness of the petition (see discussion, *infra*), the Court is in receipt of the state court records relevant to the instant habeas proceeding and the parties have extensively briefed the issues necessary for this Court to resolve the habeas petition.   Thus, the proximity of the judicial forum to Franklin County, the location of the parole proceedings, is not necessary to the adjudication of this petition.

## IV.   Timeliness of the Petition

Respondent asserts untimeliness as an affirmative defense to the petition.   See Resp't Mem. of Law, Point I.   Petitioner maintains that the petition is timely, arguing that Respondent miscalculated the date the statute of limitations began to run. Petitioner also argues that, even assuming *arguendo* Respondent's calculation is correct, said calculation does not properly take into account tolling.   See Pet'r Reply at ¶¶ 5-13.   Supplemental papers were submitted by the parties with respect to the issue of timeliness, and the issue is ripe for review.   After having

reviewed the parties' submissions, the Court finds that the petition is timely.

### (A)   AEDPA's One-Year Statute of Limitations

A state prisoner may file a § 2254 petition no later than one year from the last of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In cases such as this where a habeas petition challenges a decision of the state Parole Board, or challenges an allegedly unauthorized action by DOCS, the applicable start-date is found in 28 U.S.C. § 2244(d)(1)(D), "the date on which the factual predicate of the claim or claims presented could have been discovered through

the exercise of due diligence." <u>Cook v. N.Y. State Div. of Parole</u>, 321 F.3d 274, 280-81 (2d Cir. 2003) (quotations omitted); <u>accord</u> <u>Jenkins v. Farrell</u>, No. 07 Civ. 6937, 2009 WL 1616008, at *2-3 (S.D.N.Y. June 9, 2009) (applying § 2244(d)(1)(D) to habeas claim regarding an alleged unauthorized action by DOCS).  The Second Circuit held in <u>Cook</u> that the "factual predicate" for a petitioner challenging a parole revocation "is the revocation of his parole." <u>Id.</u> (finding that "[t]he limitations time therefore did commence at a time set by the statute, when that 'factual predicate [for his] claim . . . could' reasonably have been discovered, i.e., when Cook was notified that the administrative decision to revoke his parole had become final") (ellipsis and alteration in original).

Here, the Division of Parole issued a Notice of Final Declaration of Delinquency on June 1, 2007, stating that Petitioner had been found to be delinquent on his conditions of parole and that his maximum expiration date had been extended.  <u>See</u> Resp't Ex. A attaching Ex. J.  On October 31, 2007, Petitioner appeared before the Parole Board, and his parole was denied and his next parole board appearance scheduled for November 2009.  On November 13, 2007, Petitioner filed a notice of appeal with the Appeals Unit, and timely perfected that appeal on March 13, 2008.  <u>See</u> Resp't Ex. A attaching Exs. D, E.  The Appeals Unit failed to issue a determination within the four-month time period set forth in

9 N.Y.C.R.R. § 8006.4[c].  Thus, July 13, 2008 -- four months after the Appeals Unit failed to act on Petitioner's appeal -- was the last possible date on which Petitioner could have been notified that the Parole Board's decision had been affirmed on administrative appeal.  Petitioner had one year from that date, or until July 13, 2009, to file his habeas petition.

In opposition to the petition, Respondent submits that the statute of limitations commenced four months after November 13, 2007 (the date Petitioner filed his notice of appeal with the Appeals Unit), or on March 13, 2008.  See Resp't Mem. of Law at 18. The Court rejects this argument insofar as 9 N.Y.C.R.R. § 8006.4[c], which governs the determination of administration appeals, provides, in pertinent part, that, "[s]hould the appeals unit fail to issue its findings and recommendation within four months of *the date that the perfected appeal was received,* the appellant may deem this administrative remedy to have been exhausted, and thereupon seek judicial review of the underlying determination from which the appeal was taken."  9 N.Y.C.R.R. § 8006.4[c] (emphasis added).  In this case, the perfected appeal was received by the Appeals Unit on March 13, 2008, and the appeal was therefore deemed exhausted four months after that on July 13, 2008 when the Appeals Unit failed to act on the appeal.[6]

---

[6]

The Court notes that, although Respondent has not alleged so, June 1, 2007 or October 31, 2007, could also be considered as the date when Petitioner was notified that the administrative decision(s) relating to the revocation of his

Turning to Petitioner's argument, he offers a different start date altogether, and maintains that the statute of limitations began to run on June 28, 2011, the date the New York Court of Appeals denied leave to appeal the dismissal of his Article 78 petition. See Pet'r Reply at p 4-12. Petitioner reasons that June 28, 2011 is the appropriate start date for the limitations period because the claims raised in the Article 78 petition are "completely unrelated to the parole board's discretionary release appeal of October 2007." Supplemental Reply at p 3, ¶ 8. The Court finds Petitioner's argument unavailing and his position curious, given that the record clearly reflects that he challenged the Parole Board's October 31, 2007 determination in his Article 78 proceeding, and given that, as a conceptual matter, a state proceeding brought pursuant to CPLR Section 78 is one which specifically allows plaintiffs in New York to challenge administrative determinations. See Resp't Ex. A at p 9, ¶ 3. Accordingly, the Court rejects Petitioner's argument and finds no basis to conclude that the statute of limitations commenced on June 28, 2011.

**(B)   Statutory Tolling**

Title 28, Section 2244(d) provides that the limitations period is tolled in "[t]he time during which a properly filed application

---

parole became final.  Nonetheless, given the complex factual background of this case, the Court gives Petitioner the benefit of the later date, and finds that July 13, 2008, is the appropriate date that the statute of limitations began to run.

A-34

for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."   28 U.S.C. 2244(d)(2); <u>see</u> <u>also</u> <u>Fernandez v. Artuz</u>, 402 F.3d 111, 116 (2d Cir. 2005).

Here, Petitioner filed an Article 78 petition on December 23, 2008, 163 days after the statute of limitations had begun to run on July 13, 2008, which tolled the statute of limitations.   <u>See e.g.</u>, <u>McPherson v. Burge</u>, No. 9:06 Civ. 1076 (GTS/VEB), 2009 U.S. Dist. LEXIS 126805, 2009 WL 1293342, at *7 (N.D.N.Y. January 27, 2009) (one-year statute of limitations statutorily tolled during pendency of habeas petitioner's filed Article 78 proceeding).   In other words, at the time he filed the Article 78 petition, Petitioner had 202 days remaining in the one-year limitations period.

The limitations period was tolled during the pendency of the Article 78 petition, or until June 28, 2011, when the New York court of appeals denied leave to appeal the dismissal of the Article 78 petition.   The limitations period then ran for another 196 days, from June 28, 2011, until January 10, 2012, the date of Petitioner's federal habeas petition.   Accordingly, because the limitations period ran for an additional 196 days, and Petitioner had 202 days remaining in the limitations period, the habeas petition was timely filed.

Petitioner maintains that, in addition to the Article 78 petition, a motion to vacate, filed on or about November 30, 2007,[7] in Rockland County Court challenging his 2007 conviction also tolled the statute of limitations. See Pet'r Reply at p 11-12; Pet'r Supplemental Reply at p 1-2. Respondent counters, and argues that said motion, which challenged solely Petitioner's underlying conviction in Rockland County for second-degree attempted criminal possession of a forged instrument on the basis that he received ineffective assistance of counsel in conjunction with his guilty plea, did not work to toll the limitations period because it did not challenge the administrative decisions of the Division of Parole revoking Petitioner's parole. See Resp't Supplemental Mem. of Law. The Court agrees.

Section 2244(d)(2) "by its plain language" tolls "the limitations period only for those applications that seek review of part or all of the pertinent judgment." Collins v. Ercole, 667 F.3d 247, 251 (2d Cir. 2012); see also Hodge v. Greiner, 269 F.3d 104, 107 (2d Cir. 2001). Here, the "pertinent judgment" is the Division of Parole's administrative decisions related to the revocation of Petitioner's parole. Petitioner did not directly challenge said decisions in his motion to vacate. Rather, in his motion, Petitioner sought to vacate his 2007 judgment of conviction

---

[7] The supplemental records submitted by Respondent (Dkt. No. 15) reflect that the county court denied motion and Petitioner sought leave to appeal, which was denied on August 25, 2008.

on the basis that he received ineffective assistance of counsel
with respect to his guilty plea.  In short, Petitioner's motion to
vacate did not constitute an application for review of the
"pertinent judgment" within the meaning of § 2244(d)(2).  As
Respondent points out, Collins is instructive on this issue.  See
Resp't Supplemental Mem. of Law at 3-4.  In Collins, the habeas
petitioner argued that his Article 78 petition -- which asserted
that the DOCS had wrongly determined that his most recent sentence
should run consecutively, rather than concurrently, to a separate
previous sentence -- tolled the AEDPA statute of limitations.  See
Collins, 667 F.3d at 250.  The Court of Appeals rejected this
argument, finding that the "Petitioner did not challenge any aspect
of his 2001 conviction or sentence.  Rather, he argued that DOCS .
. . wrongly determined that his unchallenged 2001 sentence should
run consecutively, rather than concurrently, to a previous
unchallenged sentence imposed pursuant to a separate conviction for
robbery."  Id.  "An application seeking such relief," the Court
concluded, "is not an application for review of the judgment
itself" within the meaning of § 2254(d)(2).  Id. at 251.  Here,
Petitioner's motion to vacate challenging his 2007 judgment of
conviction on the basis of ineffective assistance of counsel did
not seek review or reconsideration of the pertinent judgment so as
to toll the statute of limitations under § 2254(d)(2).

The Court now turns to the merits of the petition, and finds that habeas corpus relief is not warranted.

## V.  Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."  28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).

In order to exhaust claims stemming from a denial of parole under New York law, a habeas petitioner must first file an administrative appeal with the Division of Parole's Appeals Unit. Morel v. Thomas, No. 02 CV 9622(HB), 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *2 n.3 (S.D.N.Y. June 26, 2003) (citing N.Y. Comp. Codes. R. & Regs. tit. 9, § 8006.1).  If that appeal is denied, he must seek relief in New York State Supreme Court pursuant to CPLR Article 78.   Id. (citing Desire v. New York Division of Parole, 2001 U.S. Dist. LEXIS 13784, at *6 (S.D.N.Y. Aug. 22, 2001)).  Assuming his Article 78 petition is denied, the inmate must then appeal the denial to New York's intermediate appellate court, the Appellate Division. See Morel, 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *2 n. 3 ("Morel did appeal his

denial to the Appeals Unit, and he also filed an appeal in New York
Supreme Court pursuant to Article 78.).

Here, Petitioner properly raised his habeas claims in the
state courts.  Petitioner filed an administrative appeal with the
Division of Parole's Appeals Unit, which was timely perfected on
March 13, 2008.  See Resp't Ex. A at attached D, E.  The Appeals
Unit did not rule on the appeal, and the appeal was therefore
deemed exhausted after four months.  See 9 N.Y.C.R.R. § 8006.4[c].
Petitioner filed an Article 78 petition, which was denied.
Petitioner then appealed the denial, which was denied.  He sought
leave to appeal, which was denied by the New York Court of Appeals
on June 28, 2011.  See Resp't Exs. N, Q, R, S, V.  Accordingly,
Petitioner's claims are exhausted and are properly before this
Court.

**VI.  The AEDPA Standard of Review**

For federal constitutional claims adjudicated on the merits by
a state court, the deferential standard of review codified in the
Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies.
A habeas petitioner can only obtain habeas corpus relief by showing
that the state court decision was "contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States," or was based
on "an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding."   28 U.S.C.

§ 2254(d)(1)-(2).   In this case, Petitioner's claims were adjudicated on the merits in the state court, and the AEDPA standard of review therefore applies.   Under that standard, Petitioner's claims are meritless.

## VII. Analysis of the Petition

### 1.   Due Process Claim

At ground one of the petition, Petitioner claims that he is entitled to habeas relief on the basis of a "constitutional and statutory due process violation."   In support of this claim, he sets forth various arguments all of which revolve around and/or involve the allegedly improper revocation of his parole. Specifically, he argues that the process afforded him by the State of New York did not comport with the requirements of due process set forth in Morrissey v. Brewer, 408 U.S. 471 (1972), insofar as he was deprived of a final parole revocation hearing.   See Pet., Attach. at 3-5; Pet'r Reply at p 13-33; see also Pet'r Supplemental Reply.   As discussed below, this claim is meritless.

Initially, to the extent Petitioner's "due process" claim is based upon and/or derived from perceived violations of state law -- namely particular sections of New York's Executive Law -- the claim is not cognizable on federal habeas review and is denied on that basis.   See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law"); Vasquez v. Walker, 2004 U.S. Dist. LEXIS 4830, 2004 WL

-20-

594646, at *4 (S.D.N.Y. Mar. 25, 2004) ("[v]iolations of state statutory rights are not reviewable by federal habeas courts").

Similarly, Petitioner's claim that the State's failure to comply with the two-step process set forth in Morrissey violates his federal due process rights, said claim is also meritless and provides no basis for habeas relief. In Morrissey v. Brewer, 408 U.S. at 482, the Supreme Court held that the requirements of due process apply to the revocation of parole. The Court established two criteria with regard to the process that is due. First, there must be a preliminary hearing "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." Id. at 485. Second, there must be a revocation hearing, if desired by the parolee, that "lead[s] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." Id. at 488.

In the instant case, Petitioner claims that he was not provided with a final hearing in violation of the second-step of the process set forth in Morrissey. Petitioner, however, was not provided a final hearing because, under New York law, his

conviction on a new felony charge automatically required revocation

of his parole.   <u>See</u> Executive Law § 259-i(3)(d)(iii) ("when a

parolee . . . has been convicted of a new felony committed while

under his present parole . . . and a new indeterminate sentence has

been imposed, the board's rules shall provide for a final

declaration of delinquency.").   Under such circumstances, due

process does not require a final hearing.   In <u>Alevras v. Neubert</u>,

727 F. Supp. 852 (S.D.N.Y. 1990), the court discussed the import of

the <u>Morrissey</u> decision in light of New York's Executive Law

provisions. Speaking of the requirements in <u>Morrissey</u>, the court

held:

> Those requirements were set forth in the
> context of parolees suffering revocation based
> on charges made by their parole officers, and
> theretofore not established as true by any
> court or administrative body. In <u>Black v.
> Romano</u>, 471 U.S. 606, 105 S. Ct. 2254, 85 L.
> Ed. 2d 636 (1985), . . . the Court stated that
> <u>Morrissey</u> did not consider the hearing
> requirements of "a revocation proceeding in
> which the fact finder was required by law to
> order incarceration upon finding that the
> defendant had violated a condition of . . .
> parole . . . .   Thus, the Court's discussion
> of the importance of the informed exercise of
> discretion did not amount to a holding that
> the factfinder in a revocation proceeding
> must, as a matter of due process, be granted
> discretion to continue . . . parole.

<u>Alevras</u>, 727 F.Supp. at 853.

Because revocation is based upon a conviction on new felony

charges, "the requirements of establishing probable cause and then

an actual violation of parole have been satisfied by the

[individual's] convictions.  The requirement that [he] have an opportunity to show 'that circumstances in mitigation suggest that the violation does not warrant revocation,' [as set out in Morrissey] has been made unnecessary by the New York State Legislature's determination that revocation should be automatic when the parolee is convicted of a felony while on conditional release."  Id.  Under these circumstances, there is no need to conduct a final hearing. Keyes v. Juul, 270 F.Supp.2d 327, 329 (E.D.N.Y. 2003) (Where, as here, a parolee is arrested and convicted of a new crime, the need for a final hearing to protect a parolee's due process rights by determining if the parolee has in fact "violated one or more of the conditions of release in an important respect" evaporates because the requirements of due process are satisfied either by the trial underlying the parolee's conviction or waived by his plea of guilty).  These statutory provisions have withstood constitutional challenge. See Alevras, 727 F.Supp. at 853 ("[t]here is nothing constitutionally improper in the Legislature's determination."); People ex rel. Maggio v. Casscles, 28 N.Y.2d 415, 418 (1971) ("The conviction of another crime . . . is adequate, in and of itself, to support a revocation, and, in such cases, a new inquiry is hardly necessary."); Pickens v. Butler, 814 F.2d 237, 239 (5th Cir.1987) ("Morrissey did not hold that a state is prohibited from declaring that parole will be automatically revoked for serious violations such as conviction of

-23-

a felony.")); <u>People ex rel. Harris v. Sullivan</u>, 74 N.Y.2d 305, 308 (1989)(Under New York Law, a parolee convicted of committing a new felony and sentenced to an indeterminate term of imprisonment is not entitled to a final revocation hearing because they are subject to revocation of parole by operation of law without any hearing.).

In this case, Petitioner's federal due process rights under <u>Morrissey</u> were not violated when the Division of Parole failed to conduct a final parole revocation hearing subsequent to his 2007 conviction. The record clearly demonstrates -- and Petitioner does not dispute -- that he was convicted of a new felony in 2007 and was sentenced to an indeterminate term of 1½ to 3 years imprisonment. The 2007 felony was committed while he was on parole stemming from his 1992 conviction, and his parole was therefore revoked by operation of law. Since Petitioner was therefore not entitled to a final revocation hearing, his claim that his parole was not properly revoked because he never had such a final hearing is necessarily without merit.

Accordingly, Petitioner's claim is meritless and does not warrant habeas relief. It cannot be said therefore that the state court's adjudication of this claim contravened or unreasonably applied clearly established Supreme Court law. The claim is denied in its entirety.

2.   **Equal Protection Claim**

At ground two of the petition, Petitioner claims that his equal protection rights were violated.   Specifically, he claims that New York parolees who are convicted of a new felony in New York (such as himself) do not receive a final parole revocation hearing, while New York parolees who are convicted of a new felony in another state are given a parole revocation hearing to determine whether and for how long they should be returned to prison.   <u>See</u> Pet., Attach. at 5-7; Pet'r Reply at p 34-37.   As discussed below, this claim is meritless.

As an initial matter, the Court notes that Petitioner frames this claim in the habeas petition as an equal protection violation and expressly refers to it as such in paragraph 33 of his Reply. However, in the section of his Reply entitled "Reply to Respondent's Opposition - Point II" (paragraphs 33-36), he appears to be raising several of the same arguments that he raised in his due process claim, namely, that the State's failure to conduct a final parole revocation hearing violated his constitutional rights under the second-step set forth in <u>Morrissey</u>.   To the extent he is raising the same issues/arguments he raised in his due process claim, but has simply "repackaged" them under the guise of an alleged equal protection violation, said issues/arguments have already been addressed (<u>see</u> discussion *supra*) and found to be

meritless.   To the extent he is raising a Fourteenth Amendment equal protection claim, that claim is meritless.

Under the Equal Protection Clause of the Fourteenth Amendment, "all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). However, "[a] legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." Plyler v. Doe, 457 U.S. 202, 216 (1982).   "Thus, the Supreme Court has held that – unless the legislature utilizes a classification that is inherently invidious because it disadvantages a suspect class, or because it infringes upon the exercise of a fundamental right – [courts must] exercise only a limited review power over the acts of legislatures." Hayden v. Paterson, 594 F.3d 150, 169 (2d Cir. 2010) (citing Plyler, 457 U.S. at 216-17).   "Under this limited review power, [courts] will uphold forms of state action under the Equal Protection Clause so long as the classification at issue bears some rational relationship to a legitimate state interest." Id. (citing Plyler, 457 U.S. at 216).   Here, the rational basis standard applies, because Petitioner does not allege purposeful discriminatory treatment based on his membership in a suspect class or an infringement upon the exercise of his fundamental rights.

-26-

Thus, the relevant legislation "is presumed to be valid." Cleburne, 473 U.S. at 440.

Petitioner has not rebutted that presumption of rationality. Moreover, in People v. ex rel. Harris v. Sullivan, 74 N.Y.2d 305 (1989), the New York Court of Appeals found a rational basis for the particular parole revocation statute at issue here. The Harris court explained that, "[a]s a general rule, a parolee detained in New York for allegedly violating parole is entitled to a preliminary hearing within 15 days of the execution of the parole warrant (Executive Law § 259-i[3][c][i]) and to a final revocation hearing within 90 days of the preliminary hearing (Executive Law § 259-i[3][f][i])." Harris, 74 N.Y.2d at 308. However, "a parolee convicted of committing a new felony and sentenced to an indeterminate term is not even entitled to a final revocation hearing," but is rather "subject to revocation of parole by operation of law without any hearing." Id. "The dispensation from hearing is the exception from the general requirement and cannot, under its enacted wording, be applicable against parolees subsequently convicted and sentenced from an out-of-State felony. Unlike a parolee convicted for a new felony and serving a new New York indeterminate sentence, the parolee who served a felony sentence outside New York still needs a new release consideration date to be set by the Parole Board by way of the timely final parole revocation hearing procedural mechanism." Id. at 309.

-27-

Indeed, the <u>Harris</u> court explained the legislative basis for this exception:

> The legislative history of subdivision (3)(d)(iii) of Executive Law § 259-i – the revocation hearing exemption – confirms that the exception was intended to dispense with the requirement of a final revocation hearing in only the one instance where the hearing served no apparent purpose – that is, where the parolee has been convicted of a new felony and has been sentenced to a new indeterminate sentence.   In those circumstances, a final parole revocation hearing would be a vain gesture because no fact finding by the Board of Parole would be necessary to ascertain that the parolee has in fact violated the conditions of his parole. The court of conviction and sentence would have already indisputably established that reality.
> Additionally, when a parolee is convicted of a new New York felony and a new indeterminate sentence is imposed, a final parole revocation hearing is not needed to fix the parolee's reappearance before the Board because the violator's reappearance date is automatically fixed by law at the time of sentencing for the new felony (Penal Law § 70.00[3];  § 70.25[2-a]; Executive Law § 259-i[3][d]).

<u>Harris</u>, 74 N.Y.2d at 310.

Given the rational basis of the statute challenged by Petitioner, the state court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law.   The claim is therefore denied in its entirety.

## VI.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied

and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     January 22, 2013
           Rochester, New York

A-49

AO 450 (Rev. 5/85) Judgment in a Civil Case

# United States District Court
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN SANTIAGO | **JUDGMENT IN A CIVIL CASE** |
| v. | CASE NUMBER: 12-CV-133T |
| DAVID UNGER | |

☐ **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED: that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is Denied; that the petition is Dismissed; that the Court Declines to issue a certificate of appealability and that leave to appeal as a poor person is Denied.

Date: January 23, 2013

MICHAEL J. ROEMER, CLERK

By: s/Suzanne Grunzweig
Deputy Clerk

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Form 1

John Santiago _____,

Plaintiff,

v.

David Unger, Superintendent

Defendant(s).

FILED

FEB 14 2013

MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

NOTICE OF APPEAL

__12__ -CV- _00133_ (MAT)

Notice is hereby given that __John Santiago__ [print your name],

__Petitioner__ [identify yourself as plaintiff or defendant in the district court action]

in the above-named case, hereby appeals to the United States Court of Appeals for the Second

Circuit from __XXX__ all _____ part [check one] of the decision of this Court entered on

__January 22,__ , 20 __13__ .

[Complete the next section only if you are not appealing the whole order.] l am appealing

from the part of the order which _____

_____

_____

Dated: __February, 11__ , 20 __13__                  Signature

                                                     John Santiago

                                                     Print Your Name
                                                     Appearing Pro Se

                                      Address:  Orleans Correctional Facility

                                                3531 Gaines Basin Road

                                      Telephone: Albion, New York 14411-9199

John Santiago, #07A1732
Orleans Correctional Facility
3531 Gaines Basin Road
------------------- Albion, New York 14411-9199 -------------------

February 11, 2013

Att: Michael J. Roemer, Clerk
United States District Court
Western District Courthouse
Buffalo, New York 14202-3498

Re: Notice of Appeal:
    12-cv-00133 (MAT)

Dear M.J. Roemer:

    Enclosed, please find for filing a Notice of Appeal from a
Judgment entered by the Honorable Michael A. Telesca, denying
petitioner's writ for habeas corpus. The Decision and Order was
rendered on January 22, 2013.

    Petitioner submit this instant "Notice of Appeal" within
the 30 day time frame as required by rules of the Fed. R. App. P.
4(a)(1). If there is any deficiency with the filing of the notice
of appeal with respect to the above reference matter, please
inform me of such, so as to remedy the omission. Thank you very
much for your time and attention on this matter.

                                    Sincerely,

                                    John Santiago, #07A1732

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN SANTIAGO,

                Petitioner,

     -vs-

DAVID UNGER,
SUPERINTENDENT

                Respondent.

_____

**DECISION AND ORDER**
**No. 12-CV-00133MAT**

## I.  Introduction

*Pro se* Petitioner John Santiago ("Petitioner" or "Santiago") timely[1] filed this Motion to Alter or Amend an Order and Judgment, pursuant to Fed. R. Civ. P. 59(e) ("Rule 59(e)"), to reconsider this Court's January 22, 2013 Decision and Order (Dkt. No. 17) denying him habeas relief and dismissing his habeas corpus petition.

For the reasons that follow, this Court denies Petitioner's motion pursuant to Rule 59(e) since Petitioner has failed to establish that the Court overlooked controlling decisions or

---

[1]

    Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Pursuant to the prisoner mailbox rule, a *pro se* filing is deemed filed on the date it is delivered to prison officials for mailing. <u>Noble v. Kelly</u>, 246 F.3d 93, 97 (2d Cir. 2001). Petitioner's motion is dated February 14, 2013, and the envelope mailed to this Court enclosing said motion bears a date stamp of February 15, 2013. Judgment in Petitioner's habeas case was entered on January 23, 2013 (Dkt. No. 18), and thus Petitioner had 28 days therefrom, or until February 21, 2013, to file the instant motion challenging the Court's denial of his habeas petition. The instant motion, which was deemed filed on or about February 14, 2013, is therefore timely.

factual matters justifying the Court to alter or amend its decision.

## II.  Discussion

### (A)  Rule 59(e) of the Federal Rules of Civil Procedure

"A motion for reconsideration is appropriate when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court."  See Herschaft v. New York City Campaign Finance Bd., 139 F.Supp.2d 282, 284 (E.D.N.Y. 2001); Hester Indus., Inc. v. Tyson Foods, Inc., 985 F.Supp. 83 (N.D.N.Y. 1997).  Motions to Alter or Amend pursuant to Rule 59(e) "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court."  See Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995).  District courts apply this rule strictly to dissuade repetitive arguments on issues that have already been fully considered by the Court.  See Commercial Union Ins. Co. Blue Water Yacht Club Ass'n., 289 F.Supp.2d 337, 340 (E.D.N.Y. 2003). A motion to reconsider should not be granted where a moving party seeks solely to relitigate an issue already decided.  See Shrader, 70 F.3d at 257.

Whether to grant a Rule 59(e) motion is committed to the sound

discretion of the district judge and will not be overturned absent
an abuse of discretion.  See Devlin v. Transp. Communications
Int'l. Union, 175 F.3d 121, 132 (2d Cir. 1999);  McCarthy v.
Manson, 714 F.2d 234, 237 (2d Cir. 1983).

**(B)  Petitioner's Arguments in Support of Reconsideration**

In his habeas petition, Petitioner argued that the allegedly
improper manner in which his parole was revoked violated both his
due process and equal protection rights.  See Pet., Attach. at 3-7
(Dkt No. 1); see also Pet's Reply (Dkt. No. 11).  Because these
claims had been adjudicated on the merits in the state courts, this
Court reviewed them under AEDPA's deferential standard set forth in
28 U.S.C. § 2254(d)(1), and determined that they were meritless.
See Dkt. No. 17 at 20-27.

With respect to Petitioner's due process claim, the Court
found that, to the extent the claim was based upon and/or derived
from perceived violations of state law, the claim was not
cognizable on habeas review.  See Dkt. No. 17 at 20.  Insofar as
Petitioner appeared to be also framing the claim as a federal due
process violation, the Court liberally construed his pro se
pleadings and reviewed the claim as such, under Morrissey v.
Brewer, 408 U.S. 471 (1972).  Id. at 21-24.

Petitioner now seeks reconsideration of the Court's habeas
decision, claiming that "this Court has rendered a clear error of
law" with respect to his due process claim.  Pet's Motion at ¶ 6.

In the instant motion, Petitioner does not point to an intervening change of law, nor has he offered previously unavailable evidence or identified controlling law that the Court overlooked.  Rather, he "premise[s] the instant motion on the ground that the Court clearly misunderstood the principles set forth in [Morrissey]." Id. at ¶ 5.  Specifically, he claims that the Court "misplaced" and "distorted" his due process claim, incorrectly framing it as an allegation that he was deprived of a final revocation hearing under the second-step of the two-step process set forth in Morrissey. Id. at ¶¶ 8, 9.  He maintains that he "merely seeks a 'time assessment,' 'a disposition,' or a 'sentence,' on the revocation of his parole."  Pet's Motion at ¶ 16.

Even if the Court misunderstood Petitioner's argument -- which it appears to have done, owing, to some extent, to the rather confusing manner in which Petitioner pled this claim in both the state courts and in the habeas petition -- such mistake is not sufficient to warrant reconsideration of the Court's decision denying Petitioner habeas relief on his due process claim.  This is so because the "time assessment," "disposition," or "sentence" on the revocation of his parole that Petitioner claims he "seeks" is a matter that was raised, among others, in his habeas petition and implicated solely matters of State law and/or allegedly improper conduct taken by DOCS and/or the NYS Division of Parole in revoking his parole.  See Dkt. Nos. 1, 11.  The Court therefore determined

-4-

in its habeas decision that, to the extent Petitioner's "due process" claim was based upon or derived from perceived violations of state law (which it in fact appears to have been), that claim was not cognizable on habeas review. <u>See</u> Dkt. No. 17 at 20.

It is clearly established law that the standard for granting a motion for reconsideration under Rule 59(e) is "strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court." <u>Ruiz v. Commissioner of the Dept. of Transp. of the City of N.Y.</u>, 687 F. Supp. 888, 890 (S.D.N.Y.), aff'd, 858 F.2d 898 (2d Cir. 1988). Dismissal of Petitioner's motion is therefore warranted because it repeats "due process" arguments that already have been fully considered by this Court. <u>Shrader</u>, 70 F.3d at 257.

**III. Conclusion**

For the reasons stated above, Petitioner's motion pursuant to Rule 59(e)(Dkt. No. 21) is denied. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     May 13, 2013
           Rochester, New York

UNITED STATES DISTRICT COURT                    Form 1
WESTERN DISTRICT OF NEW YORK

_John Santiago_,

       Plaintiff,

      v.              NOTICE OF APPEAL – AMENDED

_David Unger, Superintendent_     _12_ -CV- _133_ (MAT)

       Defendant(s).

Notice is hereby given that _John Santiago_ _[print your name]_

_Petitioner_ _[identify yourself as plaintiff or defendant in the district court action]_

in the above-named case, hereby appeals to the United States Court of Appeals for the Second

Circuit from _XXX_ all _____ part [check one]_ of the decision of this Court entered on

_January 23_ , 20 _13_ and May 13, 2013.

     _[Complete the next section only if you are not appealing the whole order.]_ I am appealing

from the part of the order which _____

_____

_____

Dated. _June 17,_ _____ , 20 _13_       _J. Santiago_
                             _Signature_

                            John Santiago

                            _Print Your Name_
                            **Appearing Pro Se**

Address:    Orleans Correctional Facility

            3531 Gaines Basin Road

Telephone:  Albion, New York 14411-9199